# Illinois Official Reports

## Appellate Court

---

**Glasper v. Scrub Inc., 2021 IL App (1st) 200764**

---

| | |
|---|---|
| Appellate Court Caption | DEBORAH GLASPER, Plaintiff-Appellant, v. SCRUB INC., MARK RATHKE, and THERESA KAMINSKA, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>No. 1-20-0764 |
| Filed | July 30, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-CH-15344; the Hon. Raymond W. Mitchell, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jeffrey Grant Brown, of Jeffrey Grant Brown, P.C., and Glen J. Dunn Jr., of Glen J. Dunn & Associates, Ltd., both of Chicago, for appellant.<br><br>Francisco E. Connell, Ryan A. Haas, and Michael D. Leifman, of Chuhak & Tecson, P.C., of Chicago, for appellees. |
| Panel | JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.<br>Presiding Justice Mikva and Justice Connors concurred in the judgment and opinion. |

## OPINION

¶ 1 Plaintiff, Deborah Glasper (Glasper), filed suit against defendant, Scrub Inc. (Scrub), Mark Rathke (Rathke), and Theresa Kaminska (Kaminska) (collectively, defendants) for injunctive and other relief. Plaintiff alleged that Scrub violated the Wage Payment and Collection Act (Wage Payment Act) (820 ILCS 115/1 *et seq.* (West 2018)) by not paying her for work done prior to her shift, during her lunch break, and after her shift and by not paying the overtime rate when it applied. Scrub filed a motion pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2018)), arguing that plaintiff was preempted from raising this claim based on section 301 of the federal Labor Management Relations Act (LMRA) (29 U.S.C. § 185(a) (2018)). On appeal, plaintiff contends that the circuit court erred in granting Scrub's motion to dismiss her amended complaint, pursuant to section 2-619. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3 The record reveals that plaintiff filed suit against defendants in the circuit court of Cook County on December 11, 2018. The following facts are taken from the parties' pleadings.

¶ 4 Scrub contracted with the City of Chicago Department of Aviation to provide janitorial services at Chicago O'Hare International Airport (O'Hare) on January 1, 2005.[1] Rathke was the general manager and part owner of Scrub. Kaminska has at times been an owner, the vice president of operations, the president, and a manager of Scrub. Plaintiff worked for Scrub as a janitor at O'Hare from approximately 2005 to December 31, 2012. Plaintiff was an hourly nonexempt employee and a member of the Services Employees International Union (SEIU). SEIU entered into a collective bargaining agreement (CBA) with Scrub.

¶ 5 On December 11, 2018, plaintiff filed a complaint for injunctive and other relief against Scrub, Rathke, and Kaminska. The complaint alleged that all three defendants violated section 14(a) of the Wage Payment Act (820 ILCS 115/14(a) (West 2018)).

¶ 6 The complaint alleged that plaintiff was deprived of her wages and overtime pay due to Scrub's practice of rounding the punched time clock entries (punch-time) to her detriment and without her consent. Plaintiff alleged that she and Scrub had an agreement, separate from the CBA, that Scrub breached by failing to pay wages and or final compensation in violation of the Wage Payment Act. Plaintiff alleged that Scrub required her to arrive early in order to gather work supplies and meet with supervisors prior to the start time of her shift. Accordingly, plaintiff would regularly arrive early and begin working prior to punching in at the scheduled work time. Plaintiff also regularly worked through some or all of her 30-minute unpaid lunch breaks. Plaintiff alleged that Scrub rounded punch-times in order to process payroll. During the relevant time period, plaintiff alleged that she was not paid the proper overtime pay and that Scrub failed to properly record the exact times that plaintiff took breaks. Plaintiff further alleged that Scrub penalized janitors for clocking in 5 minutes late by deducting 15 minutes from their overall time. Additionally, Scrub allegedly implemented a policy that required janitors to get overtime preapproved in order to be compensated, resulting in plaintiff routinely working overtime hours without compensation, despite defendant's knowledge thereof.

---

[1]The contract was renewed upon its expiration in December 2007.

¶ 7    As a result of Scrub's actions, plaintiff sought compensatory damages, including all regular and overtime work not previously paid; statutory damages, including prejudgment interest on all regular and overtime compensation due, accruing from the date such amounts were incurred; injunctive relief, enjoining defendants from failing to pay plaintiff for work performed in the future; and attorney fees and other relief.

¶ 8    On March 25, 2019, Scrub filed a combined motion to dismiss plaintiff's complaint pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)), contending that this complaint was plaintiff's third attempt to bring the same claims against Scrub. Plaintiff was a member of two class action cases involving defendants that were filed in federal court: *Solsol v. Scrub, Inc.*, No. 13 CV 07652, and *Abdi v. Scrub, Inc.*, No. 17 CV 05136.[2] Thus, defendants argued that plaintiff was barred from filing a third case in the state court because the supreme court has held that section 13-217 of the Code (735 ILCS 5/13-217 (West 2018)) provides a plaintiff with only a single refiling of a claim after dismissal, citing *Timberlake v. Illini Hospital*, 175 Ill. 2d 159 (1997), as support. As such, Scrub concluded that plaintiff's complaint should be dismissed with prejudice, pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018)).

¶ 9    Alternatively, Scrub argued that plaintiff's complaint should be dismissed because her Wage Payment Act claims were deficient and sought to repackage claims for unpaid wages and overtime to circumvent the statute of limitations provided under the Fair Labor Standards Act and the Illinois Minimum Wage Act. Scrub contended that the Wage Payment Act does not provide a substantive right to overtime pay, citing *Brand v. Comcast Corp.*, No. 12 CV 1122, 2013 WL 1499008 (N.D. Ill. Apr. 11, 2013), as support. Scrub thereby concluded that plaintiff's claims were insufficient under the Wage Payment Act and should be dismissed pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)).

¶ 10   On April 26, 2019, plaintiff filed a response to defendants' combined motion to dismiss. The response argued that plaintiff was not barred from filing this claim due to the single refiling rule under section 13-217 because she was not a class member in *Solsol*, nor was she a class member in *Abdi*. Further, plaintiff contends that even if she were a party, section 13-217 does not apply because those suits that were filed in federal court were not reversed or dismissed and the case does not fall into any of the six categories of when it would apply. Plaintiff argued that state law does not apply to the filings in federal court.

¶ 11   Next, plaintiff argued that she properly pled a claim under the Wage Payment Act, which was based on an agreement or contract. Accordingly, plaintiff maintained that her claim was filed within the 10-year statute of limitations period.

¶ 12   On September 16, 2019, the circuit court entered a written order granting defendants' combined motion to dismiss without prejudice. The court found that the *Solsol* case did not

---

[2]Both actions were filed in the United States Northern District of Illinois, Eastern Division. The class action complaint, *Solsol v. Scrub, Inc.*, was filed on October 24, 2013, No. 13 CV 07652. On November 27, 2014, plaintiff joined the case. On May 23, 2017, the district court decertified the class and on July 7, 2017, the court entered an order dismissing all of the opt-in plaintiffs, which included the plaintiff herein.

On July 11, 2017, plaintiff was party to a second class action suit, *Abdi v. Scrub, Inc.*, No. 17 CV 05136. On January 8, 2018, an amended complaint was filed without naming plaintiff, thereby dismissing plaintiff from the suit.

trigger the section 13-217 (*id.* § 13-217) single refiling requirement because the complaint did not meet the six instances of reversal or dismissals outlined therein. The court found that because *Solsol* did not trigger the section 13-217 single refiling requirement, it need not analyze if plaintiff was a party to *Abdi*. However, even if plaintiff was excluded because of the triggering in section 13-217, plaintiff was still allowed a single refiling within one year or within the statute of limitations, whichever was longer. Plaintiff filed the current case on December 11, 2018, within one year of the filing of the amended complaint in *Abdi*. The court found that Scrub agreed to comply with paying plaintiff overtime and failed to do so. It further found that plaintiff's allegations pertaining to Scrub's agreement to follow the applicable law, with nothing more, were insufficient to establish an agreement under the Wage Payment Act.

¶ 13 On October 15, 2019, plaintiff filed her amended complaint for injunctive relief against defendants, raising a common law breach of contract claim and a claim under the Wage Payment Act for lost wages during her employment as a janitor for Scrub. Counts I through III alleged violations under section 14(a) of the Wage Payment Act against Scrub, Rathke, and Kaminska, and count IV alleged a common law breach of contract claim against Scrub.

¶ 14 Plaintiff alleged in counts I through III that she had an agreement with Scrub within the meaning of the Wage Payment Act to be compensated for all hours worked at the rates to which the parties agreed, including one and a half times plaintiff's regular rate of pay for all time worked beyond 40 hours per week. Plaintiff alleged that this was pursuant to the agreement contained in the 2005 contract between Chicago and Scrub. Plaintiff further alleged that she routinely worked for Scrub on her unpaid lunch periods and before and after her scheduled shifts. She stated that the work performed before and after the work schedule was required and permitted by the employee handbook, was often observed and assisted by supervisors, and was performed without pay. Defendants' failure to pay plaintiff for work performed before her shifts, after her shifts, and during lunch breaks violated the Wage Payment Act, plaintiff argued.

¶ 15 Plaintiff sought a declaration and finding that Scrub, Rathke, and Kaminska jointly and severally committed the following acts: deliberate violation of the Wage Payment Act by failing to pay agreed upon wages and final compensation to plaintiff and deliberate violation of overtime provisions in the Wage Payment Act by not paying for agreed overtime wages. Plaintiff sought compensatory damages, including overtime and regular pay owed, and statutory damages, including prejudgment interest, on all regular and overtime compensation due accruing from the date such amounts were due. She also sought an injunction to prevent Scrub from failing to pay plaintiff for all future work and an award of all costs and reasonable attorney fees incurred.

¶ 16 Count IV alleged that Scrub failed to compensate plaintiff for all time worked beyond 40 hours per week at the rate of one and a half times plaintiff's regular hourly rate, pursuant to their contractual agreement. Plaintiff sought a declaration and finding that Scrub deliberately failed to adhere to the compensation terms of the agreement between the parties. Additionally, plaintiff requested damages similar to those sought for counts I through III.

¶ 17 On November 13, 2019, defendants filed a section 2-619 (*id.* § 2-619) motion to dismiss plaintiff's amended complaint, arguing that plaintiff's claims attempted to circumvent the previous findings of the circuit court by alleging there was a breach of the CBA that was made between Scrub and the SEIU with regard to wages, scheduling, hours worked, and overtime. Defendants argued that because plaintiff's claims required an interpretation of the CBA, the

claims must be arbitrated in accordance with that agreement; thus, plaintiff's Wage Payment Act claim was preempted by section 301 of the LMRA (29 U.S.C. § 185(a)), citing *Kostecki v. Dominick's Finer Foods, Inc., of Illinois*, 361 Ill. App. 3d 362 (2005), as support. Scrub further contended that plaintiff was required to exhaust any grievance through arbitration, pursuant to article XVII of the CBA, prior to raising a claim in any court citing *Gelb v. Air Con Refrigeration & Heating, Inc.*, 356 Ill. App. 3d 686 (2005), as support.

¶ 18   Scrub argued that because the CBA provided applicable wage rates, defined the workweek, allowed premium pay, and described the conditions under which overtime was to be paid, it must be interpreted and applied, thereby triggering the LMRA. Specifically, Scrub argued that the court would be required to do the following: interpret article IV of the CBA to determine which wage rate applied to plaintiff for each period or determine if plaintiff received a pay rate in excess of the specified rates under a prior CBA per article IV, section l(c); determine whether plaintiff performed any premium work per article V, section 2, and would need to determine whether work was performed on a Sunday and whether it was overtime; decide whether plaintiff was to receive time and one-half her regular rate or time and one-half the overtime rate specified for Sunday work in article IV, section 9, of the CBA; and interpret and apply the CBA's definition of overtime to decide whether plaintiff worked "in excess of the regular weekly schedule of the employee" under article V, sections 4 and 5, to decide the hours for which she would be eligible for an overtime rate. These interpretations and determinations were required to be applied in order to resolve plaintiff's Wage Payment Act and breach of contract claims.

¶ 19   Defendants also argued that plaintiff had not exhausted her contractual remedies before filing suit. Defendants argued that article XVIII of the CBA provided the grievance procedures "pertaining to any difference or dispute which may arise under [the] Agreement." Defendants argued that article XX provided that disputes over employee classifications and earnings to which they were entitled were subject to the grievance and arbitration provisions; the grievance procedure provided three steps to resolve any dispute under the CBA. Defendants argued that when a dispute was not resolved in steps I and II, then a demand for arbitration could be submitted in step III; any decision by the arbitrator in step III was final and binding upon the employer, the employee, and the union. Defendants argued that plaintiff did not submit a demand for arbitration and did not follow the three-step procedure for resolving grievances under article XVIII of the CBA and, therefore, her claims were not properly before the circuit court.

¶ 20   On December 17, 2019, plaintiff filed a response to defendants' motion to dismiss her amended complaint, arguing that defendants' motion ignored the terms of the Chicago contract, which was executed a year before the CBA was formed. The Chicago contract was evidence of Scrub's agreement to pay plaintiff. The Chicago contract defined the hourly rate, the obligation to pay, the two definitions of the overtime that plaintiff sought with her complaint, and the definition of work. Plaintiff therefore contended that reference to the CBA was not necessary.

¶ 21   Plaintiff further argued that federal preemption pursuant to section 301 of the LMRA did not apply when a state law provided for an action independent of the CBA and could be resolved without interpreting the CBA, citing *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988), as support. Plaintiff argued that no interpretation of the CBA was needed because the Chicago contract provided the definitions of workweeks (40 hours per week),

overtime (each immediate subsequent hour that was worked beyond an 8-hour shift even if a holiday), and shift time (8 hours within a 24-hour day that is not a holiday). Plaintiff argued that this was consistent with the definitions that the CBA provided, which were workweek (40 hours per week) and overtime (time that exceeded 40 hours to be paid at time and a half). Based on those comparisons, plaintiff argued that the Chicago contract and the CBA were consistent with each other. Plaintiff argued that the overtime provisions were set forth in both the Fair Labor Standards Act and the Illinois Minimum Wage Act. Plaintiff insisted that there was no need to look at the CBA in order to enforce the terms of the agreement.

¶ 22      Plaintiff further argued that her breach of contract claim was independent of the CBA and was allowed to pursue it under the Wage Payment Act claim. All references made to the CBA in her complaint was evidence and not to assert a cause of action. Plaintiff argued that filing a grievance was not required because her claim did not come from the CBA but rather from Chicago contract, and therefore, she could not be required to follow the procedures in the CBA.

¶ 23      On May 13, 2020, the circuit court entered a written order granting defendants' motion to dismiss plaintiff's amended complaint. The court noted that plaintiff was not a party to the Chicago contract and that it shed no light on any agreement between Scrub and plaintiff. The court found that the CBA was not in conflict with any state law, if it were, an independent state action would be available to the plaintiff. The court stated that plaintiff may not pick and choose certain terms of the CBA that she wished to pursue in order to suit her argument that only a "mere reference" to the CBA is required. Instead, the entirety of the CBA would be considered.

¶ 24      Regarding the argument that plaintiff's case was preempted, the circuit court found that *Gelb* and *Kostecki* were controlling. The court found that section 301 of the LMRA preempted state claims where resolving the claims required referencing and interpreting the overtime pay provisions of a CBA, citing *Gelb*, 356 Ill. App. 3d 686, and *Kostecki*, 361 Ill. App. 3d 362, as support. Here, the court found that plaintiff sought unpaid regular and overtime wages, which required a determination of the amount of unpaid wages that was owed. That required more than a mere reference to the CBA, but rather an interpretation and application of the wage, overtime, and pay provisions. The circuit court concluded that plaintiff's rights existed under the CBA and were therefore preempted under section 301 of the LMRA. Defendants' motion to dismiss was granted, and plaintiff timely appealed the decision of the circuit court.

¶ 25                                    II. ANALYSIS

¶ 26      On appeal, plaintiff contends that the circuit court erred in granting Scrub's motion to dismiss her amended complaint, pursuant to section 2-619 (735 ILCS 5/2-619 (West 2018)).

¶ 27                          A. Violation of Rule 341(h)(6)

¶ 28      As a preliminary matter, defendants contend that plaintiff's legal argument and unsupported statements should be stricken from the statement of facts pursuant to Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020). Defendants contend that plaintiff presented an improper argument in her statement of facts when she described the circuit court's decision as "erroneous" in her opening brief and that this should be stricken or disregarded. See *Board of Managers of Eleventh Street Loftominium Ass'n v. Wabash Loftominium, LLC*, 376 Ill. App. 3d 185, 187-88 (2007) (holding that the court must strike arguments made in statement of facts of appellate brief). Next, defendants contend that plaintiff included statements that were

unsupported by any citation to the record on pages five to seven of her brief in violation of Rule 341(h)(6), citing *John Crane Inc. v. Admiral Insurance Co.*, 391 Ill. App. 3d 693 (2009), as support.

¶ 29    In response, plaintiff contends that her usage of "erroneous" was intended to clarify that the circuit court's holding about what was a fact was incorrect. It was not "argumentative and confusing" as the brief in *Board of Managers of Eleventh St. Loftominium Ass'n* was found to be, citing *Board of Managers of Eleventh St. Loftominium Ass'n*, 376 Ill. App. 3d at 187, as support. Further, she indicates that the pages in question without a citation, did not need a citation, because it was a long quote, which in the end, was cited.

¶ 30    Although the usage of the term "erroneous" is argumentative, we agree with plaintiff that, as a whole, the statement of facts do not rise to the level of "argumentative and confusing." *Id.* Further, the statement of facts is able to "convey a complete picture of the proceedings." *Id.* Lastly, looking at the pages in question that do not contain citations, we also agree with plaintiff that a citation was not necessary until the end of the quoted text, which was done in accordance with Rule 341(h)(6). Thus, plaintiff's brief does not violate Rule 341(h)(6), and we decline to strike the portions referenced by defendants.

¶ 31                          B. Section 2-619 Motion to Dismiss

¶ 32    On appeal, plaintiff contends that the circuit court erred in granting defendants' section 2-619 (735 ILCS 5/2-619 (West 2018)) motion to dismiss. A motion pursuant to section 2-619 "provides for the involuntary dismissal of a cause of action based on certain defects or defenses." *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383 (2004). Grounds for a dismissal under section 2-619 are available if the "claim asserted is barred by other affirmative matter which avoids the legal effect of or defeats the claim." *Id.* An "[a]ffirmative matter must be supported by affidavit, unless apparent on the face of the pleading attacked [citation], and, in ruling on the motion, the trial court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." *Id.* We review the circuit court's grant of a motion to dismiss *de novo. Id.*

¶ 33                          1. The Applicable Agreement

¶ 34    Plaintiff contends that the circuit court erred in determining that the CBA forms the basis of the agreement between she and Scrub because there was an implied agreement with defendant, independent of the CBA, and that agreement is enforceable by the Wage Payment Act (820 ILCS 115/1 *et seq.* (West 2018)). Plaintiff alleges an implied agreement where Scrub agreed to pay her based on a demonstrable formula for work done, citing *Landers-Scelfo v. Corporate Office Systems, Inc.*, 356 Ill. App. 3d 1060 (2005), and *Zabinsky v. Gelber Group, Inc.*, 347 Ill. App. 3d 243 (2004), as support. Plaintiff attempted to further demonstrate the terms of the agreement by referencing the Chicago contract, thereby negating any need to interpret the CBA. Additionally, plaintiff contends that the truth of the implicit agreement should be deemed admitted because defendant did not answer the amended complaint. Plaintiff contends that when filing a motion to dismiss, defendants admitted the sufficiency of plaintiff's claims citing *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324 (2008), as support.

¶ 35    Defendants, however, contend that the CBA is controlling and must be interpreted in order to address plaintiff's claims. They allege that the Chicago contract provided for minimum pay rates for all labor, including janitorial, but an interpretation of the CBA was still needed to

establish exact amounts for overtime pay. Defendants also argue that plaintiff's reliance on *Landers-Scelfo* was misplaced because in that case the plaintiff was not in a union and had no controlling CBA or written agreement, and thus, reliance on the Wage Payment Act was appropriate. See *Landers-Scelfo*, 356 Ill. App. 3d at 1067-68. In the present case, plaintiff is a member of the SEIU, and the terms of her employment with Scrub (wages hours and overtime) were expressly governed by the CBA.

¶ 36    We have previously held that the mere existence of a CBA does not require all claims to be subject to the grievance and arbitration procedures of it. *Gelb*, 356 Ill. App. 3d at 695. Instead, the court must consider if the claim is one governed by contract. *Id.* However, where a CBA "adequately addresses an aspect of employee compensation or other working conditions, a state statute will defer to the collective bargaining agreement's grievance procedures." *Id.* Further, when the "employee's claim arises entirely out of a collective bargaining agreement, the employee lacks standing to pursue judicial relief without first exhausting any remedies provided for in the agreement." *Id.*

¶ 37    Here, the parties do not dispute that defendants entered into the CBA with SEIU on April 6, 2009. Article 1 of the CBA provides that the employer recognizes the union as the sole and exclusive representative of all janitorial employees. Thus, there is also no dispute that, pursuant to that same CBA, plaintiff is a member of SEIU and subject to the terms contained in said CBA.

¶ 38    Plaintiff claims defendants failed to pay her for work done prior to her shift, work done after her shift, and work done during her lunch break and failed to pay the overtime rate when it applied. The CBA in the instant case specifically defines the number of hours in a work week, amount of wages, and provides a formula to calculate overtime pay. The CBA further spells out in great detail grievance procedures and arbitration that must be followed by both the union members and the employer. Thus, there is no aspect of plaintiff's claim that is not addressed by, does not arise from, or is independent of the CBA.

¶ 39    Next, plaintiff contends that she had an implied agreement with defendant, which would also allow her to raise a claim under the Wage Payment Act. It is true that this court has held that an implied contract can exist in the absence of an express agreement. *Landers-Scelfo*, 356 Ill. App. 3d at 1067. However, here, plaintiff has the benefit of the express agreement in the form of a CBA that has been negotiated on her behalf by the SEIU. Thus, no implied agreement can exist between plaintiff and Scrub.

¶ 40    Further, article 1 of the CBA specifically provides that the employer and employees shall not bargain independently of the union with respect to wages, hours of employment, or working conditions. This language specifically prohibits employees from creating contracts or agreements independent of SEIU's CBA. Hence, it follows that this prohibition would likewise apply to implied or inferred agreements as well. If this court allowed every employee with a CBA to also have an implied contract, employers would be inundated with numerous independent agreements potentially all with varying terms. And the unions' negotiating powers would likely be severely diminished.

¶ 41    Plaintiff's contention that the implied agreement became controlling upon the filing of the section 2-619 motion is false. A section 2-619 motion to dismiss allows for a party's complaint to be barred. *Borowiec*, 209 Ill. 2d at 383. When movants file a section 2-619 motion, they admit the sufficiency of the complaint, but provide an affirmative defense that would defeat the claim. *Reynolds v. Jimmy John's Enterprise, LLC*, 2013 IL App (4th) 120139, ¶ 31. Here,

defendant has raised the defense of preemption, which we will address further shortly, asserting that this court is barred from hearing plaintiff's claim. While admitting the sufficiency of the claims, defendant argues that the circuit court is not the correct forum for hearing those claims.

¶ 42 Some of the most important functions of a CBA are to establish a negotiated and stable pay structure for employees and to provide mechanisms for adequate dispute resolution. As a member of the SEIU, plaintiff had no need to infer an independent agreement as she already had the benefit of a negotiated agreement in the form of the CBA. The CBA provided contractual remedies to address her specific disputes regarding unpaid wages and overtime pay, which should have been exhausted before filing the instant claim.

¶ 43 Plaintiff has not challenged the specific terms or provisions of the CBA; therefore, we must presume that the articles in the CBA governing compensation, working conditions, and grievance procedures were adequate. Thus, in keeping with the court in *Gelb*, the Wage Payment Act must give deference to the CBA. *Gelb*, 356 Ill. App. 3d at 695. Therefore, we find that the circuit court did not err in finding the CBA to be the controlling agreement.

¶ 44 2. Section 301

¶ 45 Plaintiff contends that the circuit court erred in finding that her claim was preempted by section 301 of the LMRA (29 U.S.C. § 185(a)). Under section 301, federal district courts are vested with jurisdiction over complaints alleging a breach of contract between an employer and union. *Bartley v. University Asphalt Co.*, 111 Ill. 2d 318, 321-22 (1986). Having decided that the CBA is controlling, we will now apply section 301 to plaintiff's claims.

¶ 46 Plaintiff contends that her claims are not preempted because her case is analogous to *Whitmore v. Kraft Foods Global, Inc.*, 798 F. Supp. 2d 917 (N.D. Ill. 2011), which found no preemption when the plaintiff abandoned a more generous CBA compensation right in order to enforce an independent agreement that was consistent or equal with the minimum compensation rights of the worker under the state law framework. Plaintiff again argues that no interpretation is needed in regard to any portion of the CBA to realize that Scrub promised to pay plaintiff for all time worked, including overtime, citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985), as support. Further, plaintiff insists that a defendant filing a motion to dismiss admits the legal sufficiency of the complaint and deem all facts stated therein as true.

¶ 47 In response, defendants contend that the CBA must be interpreted and applied in order to resolve plaintiff's claim, and this is preempted by section 301 of the LMRA citing *Gelb*, 356 Ill. App. 3d 686, as support. Specifically, defendants contend that plaintiff's allegations regarding scheduling, hours, wages, and overtime require interpretation of the CBA's article IV; thus, the claims are preempted by section 301 of the LMRA. Defendants also contend that plaintiff's reliance on *Whitmore* is misplaced because that case was about a provision in a CBA that was alleged to be unenforceable under state law, which is not what plaintiff is alleging in this case. See *Whitmore*, 798 F. Supp. 2d at 922. Further, defendants contend that this court is not bound by the federal case law from which *Whitmore* arose, citing *Kinney v. St. Paul Mercury Insurance Co.*, 120 Ill. App. 3d 294 (1983), as support. And finally, defendants point out that the CBA requires plaintiff to exhaust the grievance and arbitration provision provided in article XVIII prior to bringing its claim before the court.

¶ 48 Defendants are correct. Section 301 of the LMRA grants federal district courts exclusive jurisdiction over disputes involving CBAs. See *Whitmore*, 798 F. Supp. 2d at 920-21. Contrary to plaintiff's contention, the terms of her scheduling, hours, wages, and overtime are not

obvious and able to be ascertained without interpreting the CBA. The fact finder would have to refer to the CBA in order to determine the amount of wages due to plaintiff, whether defendants complied with the CBA in determining overtime pay, whether plaintiff worked the relevant time period, and whether overtime was calculated using the formula prescribed by the CBA. See *Gelb*, 356 Ill. App. 3d at 693-94.

¶ 49 Further, not only is plaintiff's reliance on federal appellate court cases not binding on this court (*Kinney*, 120 Ill. App. 3d at 300), but plaintiff has not alleged that the terms of the CBA are unenforceable as was the case in *Whitmore* (see *Whitmore*, 798 F. Supp. 2d at 922). Thus, we are not persuaded that we should ignore the terms of the CBA, and as we determined earlier, no other agreement is binding between Scrub and plaintiff.

¶ 50 Although the Wage Payment Act does provide standard requirements for employers that ascertain the work week, wages, and overtime, those requirements are generally provided in the absence of a CBA. *Kostecki*, 361 Ill. App. 3d at 370. In *Kostecki*, the plaintiff belonged to a union that negotiated the terms of her employment with her employer. Plaintiff similarly filed a complaint against her employer, alleging it violated multiple state wage statutes by not paying for work done and for not timely paying employees. *Id.* at 365. Her employer filed a section 2-619 motion to dismiss, which was granted by the circuit court. *Id.* On appeal, this court held that the CBA governed the exact claims plaintiff attempted to raise in state court. Since no independent claim arose, she had to follow the grievance and arbitration procedures in the CBA. *Id.* at 371. We found that the fact finder would have had to interpret the terms of the agreement in order to resolve plaintiff's claims; "an activity best suited for the arbitrator." *Id.* Similarly, in this case, there exists no independent claim raised by plaintiff that is not covered by the CBA. The CBA covers the work week, overtime, and wages; therefore, the terms of the CBA would have to be interpreted in order to resolve plaintiff's claims.

¶ 51 Federal labor policy provides that when resolving a state law claim that is dependent on the analysis of the terms contained in the agreement, the claim must either be arbitrated as required by the CBA or dismissed as preempted under section 301 of the LMRA. *Id.* at 368. As alluded to earlier, the grievance and arbitration procedure provided in the CBA under article XVIII have not been exhausted by plaintiff. We have held that when a CBA establishes a grievance and arbitration procedure for disputes arising out of the CBA and the court has determined that the claim on its face is governed by the contract, an employee must attempt to exhaust their contractual remedies before seeking judicial relief. *Gelb*, 356 Ill. App. 3d at 695. "The exhaustion of administrative remedies is a procedural prerequisite to maintaining a section 301 action." *Id.* Here, article XVIII of the CBA had a three-step procedure for employees to follow if they have a grievance. Plaintiff did not use this administrative remedy provided in the CBA, which was a prerequisite to filing suit per section 301 of the LMRA. The claims and respective remedial procedures are clearly addressed by the CBA, thereby negating plaintiff's alleged independent action. As such, we conclude that the trial court did not err in finding plaintiff's claims to be preempted.

¶ 52 Lastly, plaintiff's contention that her entire complaint established facts that required no interpretation of the CBA because defendants filed a section 2-619 motion to dismiss in lieu of an answer is patently false. As we have held above, the nature of a section 2-619 motion admits the sufficiency of the complaint but provides an affirmative defense that would defeat the claim. *Reynolds*, 2013 IL App (4th) 120139, ¶ 31. Plaintiff seems to confuse sufficiency with truth or fact; however, they are not synonymous. Essentially, a section 2-619 motion says

- 10 -

that plaintiff's complaint may be sufficient and alleges enough on which to base a claim, but that the claim is preempted and cannot move forward. Accordingly, we find that the circuit court did not err in granting defendants' motion to dismiss the plaintiff's amended complaint.

¶ 53                                    III. CONCLUSION

¶ 54        Based on the foregoing, the judgment of the circuit court is affirmed.

¶ 55        Affirmed.