2021 IL App (1st) 201081-U

No. 1-20-1081

Second Division
October 19, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| | ) | Appeal from the |
| ROSA TITO, DELIA PAEZ, and | ) | Circuit Court of |
| CHRISTINA NAUT, | ) | Cook County. |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | No. 20 CH 1081 |
| v. | ) | |
| | ) | |
| SCRUB, INC., MARK RATHKE, and | ) | Honorable |
| THERESA KAMINSKA, | ) | Anna M. Loftus |
| | ) | Judge, presiding. |
| Defendants-Appellees. | ) | |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred.

**ORDER**

¶ 1    *Held*: The circuit court's decision is affirmed where plaintiffs' claims were preempted by the Labor Management Relations Act and plaintiffs did not exhaust all contractual remedies.

¶ 2    Plaintiffs-appellants, Rosa Tito, Delia Paez, and Christina Naut filed suit against

defendants-appellees, Scrub, Inc. (Scrub), Mark Rathke, and Theresa Kaminska, alleging violation

of the Illinois Wage Payment and Collection Act (Wage Act) (820 ILCS 115/1, *et seq.* (West 2018)) and breach of contract for unpaid or underpaid overtime wages. The circuit court dismissed the complaint with prejudice, finding that the claims were preempted by federal law, specifically the Labor Management Relations Act (LMRA) (29 U.S.C. § 185(a) (2018)). On appeal, plaintiffs essentially argue that the ruling was in error because (1) their claims derive from an "implied" agreement; (2) no interpretation of the collective bargaining agreement was required to resolve the case; (3) defendants failed to identify any agreement terms subject to dispute or interpretation; and (4) the Wage Act forms a separate statutory basis for plaintiffs' right to payment. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Pursuant to a contract with the City of Chicago Department of Aviation dated January 1, 2005 (City Contract), Scrub agreed to provide janitorial services at Chicago O'Hare International Airport (O'Hare). Rathke was the general manager and part owner of Scrub. Kaminska served in various capacities as owner, vice president of operations, president, and manager of Scrub. Plaintiffs were formerly employed by Scrub as janitors at O'Hare. Scrub entered into a collective bargaining agreement (CBA) with plaintiffs' union, Service Employees International Union (SEIU). Plaintiffs were employed by Scrub from sometime prior to January 2009 to December 2012.

¶ 5                                  A. Amended Complaint

¶ 6    On October 28, 2019, plaintiffs filed their four-count amended complaint for injunctive and other relief against defendants, alleging violation of the Wage Act and breach of contract.[1] The facts section of the amended complaint stated that Scrub entered into the city contract in January 2005 to provide janitorial services at O'Hare. The city contract was attached to the amended complaint as Exhibit 1 and "[t]he terms of the contract [were] incorporated by reference into [the] complaint." The amended complaint stated that the city contract contained "essential provisions covering wages, hours, and working conditions applicable to all covered employees" and "it require[d] that Scrub provide approximately 250 janitors to perform janitorial services at [O'Hare]." Additionally, the amended complaint stated that the city contract required Scrub to "comply with all of the terms and conditions of the *** contract during its term and any extensions," provide a "specific number of man-hours within various physical zones of the airport, and provide "complete and accurate time records for each worker." The city contract was in force during all relevant time.

¶ 7    In addition to the city contract, the CBA was ~~also~~ attached to the amended complaint as Exhibit 1. Citing Article IV (Wages) of the CBA, plaintiffs alleged in the facts section of their amended complaint that Scrub agreed to pay janitorial employees "at the rate of $14.50 per hour," followed by $15.05 and $15.30 per hour for the subsequent years. Citing the CBA, plaintiffs asserted that "Scrub agreed the janitors' work week would be 35 to 40 hours, in 5 consecutive days" and work "in excess of forty hours in one workweek or in excess of the regular weekly schedule shall be paid at one and one-half times the employee's regular hourly rate." Plaintiffs alleged that they were not paid for the work they performed before and after their scheduled shifts

---

[1] On September 30, 2019, the circuit court dismissed, without prejudice, plaintiff's initial complaint for failing to allege sufficient facts and failing to "attach the employee handbook alleged in the complaint."

as well as work performed during their 30-minute meal breaks. Plaintiffs asserted that Kaminska and Rathke, or employees acting under their direction, would round minutes recorded on plaintiffs' punch cards, which were then used to calculate and process their payroll. Plaintiffs noted that "[d]efendants' practice of rounding janitors' punch cards and failing to pay for all time worked" was "widespread," "occurred for a significant period of time," and resulted in defendants benefitting from "reduced labor and payroll costs."

¶ 8        Counts I through III of plaintiffs' amended complaint alleged violation of section 14(a) of the Wage Act (820 ILCS 115/14(a) (West 2018) against Scrub, Rathke, and Kaminska, respectively. Count IV alleged breach of contract against Scrub based on "the contractual agreement" between the parties. Each count realleged the allegations set forth in the facts section. Plaintiffs alleged that defendants violated the Wage Act by failing to pay them "all their earned and agreed-upon wages at the rate agreed to, under the provisions of the [Wage Act]." Specifically, plaintiffs asserted that defendants "agreed, within the meaning of the [Wage Act] of an 'agreement,' to compensate [p]laintiffs for all hours worked at the rates set forth above, including at one and one-half times their regular hourly rates, and at such rates as increased thereafter, pursuant to the parties' agreements." Plaintiffs provided Exhibit 1 as "evidenc[ing] the parties' agreement and the parties' conduct in adhering to that agreement." Plaintiffs alleged that the work performed before and after the scheduled shift was required and permitted by the employee handbook, was often observed and assisted by supervisors, and was performed without pay. With regards to their breach of contract claim, plaintiffs asserted that pursuant to "the contractual agreement" between Scrub and plaintiffs, Scrub "was to compensate [p]laintiffs for all time worked at the rates referenced herein, and for all time worked beyond forty hours per week at the rate of 1.5 times [p]laintiffs' regular hourly rate."

¶ 9                                    B. Motion to Dismiss

¶ 10    On November 19, 2019, defendants moved to dismiss plaintiffs' amended complaint with prejudice pursuant to sections 2-619(a)(1) and (a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(1), (a)(9) (West 2018)). Defendants argued that the amended complaint "expressly incorporate[ed] the CBA and relied[d] on the CBA's provisions governing wages, scheduling, hours worked, and overtime." Defendants contended that the CBA at issue, *inter alia*, defined the workweek, set forth the applicable wage rates, "mandate[d] that overtime pay should be paid at time and one-half the regular rate for certain work," and provided for overtime rates for work on Sundays and holidays. As such, plaintiffs' Wage Act and breach of contract claims "depend[ed] on the interpretation and application of the CBA" and therefore, the claims were preempted by Section 301 of the LMRA. Additionally, defendants argued that the amended complaint should be dismissed where plaintiffs "made no allegation that they attempted to exhaust the remedies contained in grievance and arbitration provisions of [Article XVII of the] CBA."

¶ 11    On December 17, 2019, plaintiffs filed their response to defendants' motion. Plaintiffs argued that they only sought to enforce defendants' agreement to pay as evidenced by the city contract. Plaintiffs asserted that the city contract set forth the "hourly rate," the "obligation to pay," and defined overtime. Plaintiffs further contended that compensation rights provided by such agreement, such as the right to payment of 1.5 times the hourly rate for every minute worked in excess of 40 hours, were the same rights conferred by the Illinois Minimum Wage Law (IMWL) and the Fair Labor Standards Act (FLSA) for overtime hours. As such, plaintiffs argued that the IMWL and FLSA served as a "separate statutory basis for plaintiffs' right to payment, independent of the rights conferred by the CBA." Plaintiffs further asserted that they had "foregone the additional compensation benefits conferred by the CBA" and therefore, reference to the CBA "to

confirm that those same independent rights are indeed also conferred by the CBA '[did] not trigger preemption.' "

¶ 12    On January 1, 2020, defendants filed their reply. Defendants argued that the city contract was between the City of Chicago and Scrub and therefore, plaintiffs were not in privity with Scrub under that contract. Additionally, defendants contended that the city contract did not govern where the CBA expressly stated that Scrub could not bargain independently of SEIU with respect to wages, hours, and employment or working conditions. Defendants further argued that plaintiffs' amended complaint should be dismissed where plaintiffs failed to follow the CBA's grievance procedures and exhaust the CBA's contractual remedies.

¶ 13                              C. Circuit Court's Order

¶ 14    On September 8, 2020, the circuit court granted defendants' motion and dismissed plaintiffs' amended complaint with prejudice. Relying on *Gelb v. Air Con Refrigeration and Heating, Inc.*, 356 Ill. App. 3d 686, 692 (2005), *Kostecki v. Dominick's Finer Foods, Inc.*, 361 Ill. App. 3d 362 (2005), and *Carletto v. Quantum Foods*, No. 1-05-3163, 2006 WL 2018250 (unpublished order under Illinois Supreme Court Rule 23), the court held that plaintiffs' claims were preempted by federal law. The court found that all claims alleged in the amended complaint required the application and interpretation of the CBA. The court noted that the amended complaint both attached and referenced the CBA, "including its terms regarding the pay rate, premium pay, and overtime pay." Further, "[a]llegations concerning such [were] incorporated into each claim."

¶ 15    With respect to the city contract, the court  found that plaintiffs did not have "standing" to enforce the city contract because they were not in "privity of contract with Scrub and were not parties to the [c]ity [c]ontract." The court noted that the city contract did not "set forth the wages Scrub agreed to pay to [p]laintiffs" and instead, "the operative agreement between [p]laintiffs and

Scrub on wages, hours, scheduling and overtime [was] the CBA." The court also noted that "independent contracts [were] prohibited by the CBA." Plaintiffs appealed.

¶ 16    After briefing had concluded, defendants sought and were granted leave to supplement their response brief with new authority, *Glasper v. Scrub Inc.*, 2021 IL App (1st) 200764[2] which defendants argued "mirror[ed]" the facts and issues in this case.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, plaintiffs contend that their claims for unpaid overtime wages are not preempted by the LMRA because the claims derive from an agreement, independent from the CBA, which was "[in] itself *** sufficient to state a cause of action under the [Wage Act]." Plaintiffs further argue that defendants failed to identify any terms subject to dispute or interpretation and that no interpretation of the CBA is required to resolve the case but, rather, the court can examine the relevant payroll records. Plaintiffs also contend that the Wage Act forms a separate statutory basis for plaintiffs' right to payment.

¶ 19                              A. Standard of Review

¶ 20    Prior to addressing the merits of plaintiffs' claims, we must first determine our standard of review. This appeal challenges the grant of defendants' 2-619 motion to dismiss. A motion to dismiss under section 2-619 admits the legal sufficiency of the complaint but asserts an affirmative matter that acts to defeat the plaintiff's claim. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. When ruling on a motion to dismiss under section 2-619, it is proper for a court to accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party. *Edelman, Combs and Latturner v. Hinshaw and*

_____

[2] At the time defendants filed their motion for leave to supplement, *Glasper* was issued as a Rule 23 Order. On July 30, 2021, *Glasper* was re-issued as an Opinion.

*Culbertson*, 338 Ill. App. 3d 156, 164 (2003). Section 2-619(a)(1) allows for dismissal of an action if the court lacks subject matter jurisdiction. *Id.* Section 2-619(a)(9) provides for dismissal on grounds that claims are barred by an "affirmative matter avoiding the legal effect of or defeating the claim." *Id.* We review *de novo* the circuit court's decision to grant or deny a section 2-619 motion to dismiss. *Lacey v. Village of Palatine*, 232 Ill. 2d 349, 359 (2009). We "may affirm the [circuit] court's judgment on any basis that is supported by the record." *Stoll v. United Way of Champaign County, Illinois, Inc.*, 378 Ill. App. 3d 1048, 1051 (2008).

¶ 21                                B. Applicable Agreement

¶ 22    Plaintiffs argue that the circuit court erred in finding that the CBA formed the basis of the parties' agreement regarding payment of wages. Relying on *Landers-Scelfo v. Corporate Office Systems*, 356 Ill. App. 3d 1060 (2005), and *Zabinsky v. Gelber Group, Inc.,* 347 Ill. App.3d 243 (2004), plaintiffs contend that they "expressly alleged" an agreement, independent of the CBA, and that agreement was sufficient to state a cause of action under the Wage Act. Plaintiffs further argue that the terms of such agreement were further supported by the city contract. Additionally, plaintiffs contend that the truth of this agreement and sufficiency of the claims should be deemed admitted because defendants did not answer the amended complaint, but instead filed a motion to dismiss.

¶ 23    Defendants contend that the CBA governs the instant matter and must be interpreted to address plaintiffs' claims. Defendants argue that plaintiffs' reliance on *Landers-Scelfo* is misplaced because in that case the plaintiff was not a union member and there was no written agreement. Defendants further contend that the city contract is "inapplicable" because the plaintiffs were not parties to the city contract and the city contract solely set forth the terms under which Scrub would provide janitorial services to the City of Chicago.

¶ 24    At the outset, we note that after briefing had concluded in this case, a different division of this court had issued a decision in *Glasper v. Scrub Inc.*, 2021 IL App (1st) 200764, cited by defendants as supplemental authority. Defendants correctly point out that the facts and issues in *Glasper* appear identical to the facts and issues presented in this appeal. In *Glasper*, the plaintiff was employed by Scrub as a janitor at O'Hare, was a member of the SEIU, and the terms of her employment were set forth by a collective bargaining agreement. *Id.* ¶ 4. The plaintiff filed an amended complaint against the defendants for injunctive relief, "raising a common law breach of contract claim and a claim under the [Wage Act] for lost wages." *Id.* ¶ 13. With respect to the Wage Act, the plaintiff alleged that the defendants violated section 14(a) of the Wage Act (820 ILCS 115/14(a) (West 2018)) by not paying her for work performed during lunch periods and before and after her scheduled shifts. *Id.* The defendants moved to dismiss the amended complaint pursuant to section 2-619, arguing that the plaintiff's claims were preempted by the LMRA because the CBA must be interpreted and applied. *Id.* ¶ 17. Relying on this court's decisions in *Gelb*, 356 Ill. App. 3d at 692 and *Kostecki*, 361 Ill. App. 3d at 362, the circuit court dismissed the plaintiff's claims as being preempted by the LMRA. *Id.* ¶ 24. This court affirmed, finding that the CBA was the controlling agreement and plaintiffs' claims were preempted. *Id.* ¶¶ 43-51. Because like *Glasper*, the present case involves allegations of violation of the Wage Act and breach of contract, and raises the issues of preemption under the LMRA based on what appears to be the same collective bargaining agreement, we look to *Glasper* not only as instructive on the issues before on us in this appeal, but also with an interest in developing a consistent body of law.

¶ 25    The Wage Act defines "wages" and "final compensation" as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties." 820 ILCS 115/2 (West 2018). Here, the CBA constituted an agreement pursuant to the

Wage Act and is the agreement that plaintiffs are seeking to enforce. Contrary to plaintiffs' assertions, their amended complaint both attached and referenced the CBA, including its terms regarding regular pay and overtime pay rate. Specifically, plaintiffs cited Article IV (Wages) of the CBA in the facts section of their complaint to support their allegation that Scrub agreed to pay janitorial employees "at the rate of $14.50 per hour," followed by $15.05 and $15.30 per hour for the subsequent years. Further citing the CBA, plaintiffs asserted that "Scrub agreed the janitors' work week would be 35 to 40 hours, in 5 consecutive days" and work "in excess of forty hours in one workweek or in excess of the regular weekly schedule shall be paid at one and one-half times the employee's regular hourly rate." The allegations set forth in the facts section were then incorporated into each claim. As such, the CBA clearly governs plaintiffs' claims.

¶ 26    Nevertheless, plaintiffs assert that they expressly alleged an agreement, independent of the CBA, which allowed plaintiffs to raise their claims under the Wage Act. Plaintiffs appear to argue ~~arguing~~ that there was an "implied" agreement between the parties which is enforceable. We agree with defendants that an implied contract can exist in the absence of an express agreement. In *Landers-Scelfo,* an account executive alleged that her employer breached its agreement to pay her sales commissions in accordance with a particular formula. 356 Ill. App. 3d at 1062-63. The Second District held that her allegations that the employer had paid her in accordance with that formula for almost a year was enough to allege that it had assented to the commission agreement. *Id.* at 1068. Similarly, in *Zabinsky*, the plaintiff testified at trial that he had worked pursuant to an agreement that his employer would pay him a bonus based on a mutually agreed upon formula. 347 Ill. App. 3d at 248. Even though he had not described all the elements for an enforceable contract, the court found that his description of the bonus agreement supported his Wage Act claim. *Id.* at 249.

¶ 27 However, *Landers-Scelfo* and *Zabinsky* are distinguishable and thus, do not control our disposition. Both cases involved allegations of an implied agreement, supported by mutual assent, to do something other than abide by existing wage laws. The record here clearly shows the existence of an express agreement in the form of a CBA that was negotiated on plaintiffs' behalf by SEIU. Plaintiffs were members of the SEIU and the terms of their employment, including wages, hours, and overtime pay, were expressly governed by the CBA. As such, no "implied" agreement regarding the same terms can exist where a written agreement between the parties was in place. See *Glasper*, 2021 IL App (1st) 200764, ¶ 39.

¶ 28 Additionally, Article I of the CBA provides that the "[e]mployer recognizes the [SEIU] as the sole and exclusive representative of all [janitorial employees]" and that "the [e]mployer and employees shall not bargain independently of the [SEIU] with respect to wages, hours of employment or working conditions, as provided in [the CBA]." The plain language of Article I specifically prohibits employees, such as plaintiffs, from negotiating or creating contracts or agreements independent of the SEIU and the CBA. As such, it follows that this prohibition would likewise apply to any implied agreements. *Glasper*, 2021 IL App (1st) 200764, ¶ 40. In finding that the CBA is the sole agreement at issue here, we are persuaded by the reasoning in *Glasper* that "[i]f this court allowed every employee with a CBA to also have an implied contract, employers would be inundated with numerous independent agreements potentially all with varying terms. And the unions' negotiating powers would likely be severely diminished." *Id.*

¶ 29 We briefly note that although plaintiffs' amended complaint also included the city contract as an exhibit, because plaintiffs were neither parties to the city contract nor in privity with Scrub under that contract, the city contract does not control the instant matter. In sum, the CBA is the

only document governing the wage dispute between the parties. Therefore, plaintiffs' argument that a separate agreement governs the instant matter must fail.

¶ 30    Next, we turn to plaintiffs' argument that the alleged implied agreement became controlling upon defendants' filing of a section 2-619 motion to dismiss. Plaintiffs contend that because defendants have "yet to file an answer" and instead filed a motion to dismiss pursuant to section 2-619, the "[implied] agreement is indisputably a fact" and defendants "have admitted the legal sufficiency of [their] claims." Essentially, plaintiffs are arguing that their entire complaint established facts and established the existence of an implied agreement that require no interpretation of the CBA. As we previously noted, it is proper for a court to accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party when ruling on a motion to dismiss under section 2-619. See *Edelman, Combs and Latturner*, 338 Ill. App. 3d at 164. Even assuming *arguendo* that plaintiffs' amended complaint included well-pled facts as to an implied agreement which must be taken as true, there was no need, as we discussed above, for plaintiffs to infer an independent agreement as they already had the benefit of a negotiated agreement in the form of a CBA. See *Glasper*, 2021 IL App (1st) 200764, ¶ 42.

¶ 31    Further, we note that although a motion to dismiss under section 2-619 admits the legal sufficiency of the complaint, it asserts an affirmative matter that acts to defeat the plaintiff's claim. *Patrick Engineering, Inc.*, 2012 IL 113148, ¶ 31. In other words, a 2-619 motion provides that a plaintiff's complaint may be sufficient and alleges enough facts upon which a claim is based, but there is an affirmative matter that defeats plaintiff's claim. *Glasper*, 2021 IL App (1st) 200764, ¶ 52. Like the plaintiff in *Glasper,* plaintiffs here seem to "confuse sufficiency with truth or fact; however, they are not synonymous." *Id.* Here, while admitting the sufficiency of the claims,

defendants raised the defense of preemption, asserting that the court is barred from hearing plaintiffs' claims and that it is not the proper forum. As such, plaintiffs' argument that the implied agreement and all the facts alleged in the amended complaint must be taken as true is irrelevant in resolving the issues on appeal.

¶ 32     Having found that the CBA is the governing agreement at issue, our inquiry turns to whether plaintiffs' claims are preempted by the LMRA.

¶ 33                                    C. The LMRA

¶ 34     Plaintiffs contend that the circuit court erred in finding that their claims were preempted by section 301 of the LMRA. Section 301 of LMRA "grants federal district courts exclusive jurisdiction over a state law claim when resolution depends on interpreting the terms of a CBA." *Byrne v. Hayes Beer Distributing Company*, 2018 IL App (1st) 172612, ¶ 20. "In general, where a collective bargaining agreement exists between employers and employees who are parties to litigation, their disputes fall within the exclusive purview of federal labor laws, not state laws." *Gelb*, 356 Ill. App. 3d at 692. This is to ensure "consistent resolution of labor disputes by authorizing federal courts to forge a body of federal law for the enforcement of CBAs." *Byrne*, 2018 IL App (1st) 172612, ¶ 20. The LMRA, however, does not preempt state law claims simply because the plaintiff is a union member and employed under a CBA. *Id.* Rather, the issue of whether section 301 of LMRA preempts a state law claim entails a "case-by-case factual analysis." *Id.* (quoting *In re Bentz Metal Prods. Co.*, 253 F.3d 283, 285 (7th Cir. 2001)).

¶ 35     In determining "whether a claim filed pursuant to a state statute or common law tort is preempted, we examine the character of the claim." *Gelb*, 356 Ill. App. 3d at 692. "Where a matter is purely a question of state law and is entirely independent of any understanding of the terms of a collective bargaining agreement, it may proceed as a state law claim." *Id.* In contrast, a claim will

be preempted by federal law where its resolution depends on the interpretation of a collective bargaining agreement. *Id.* "Where claims are predicated on rights addressed by a collective bargaining agreement, and depend on the meaning of, or require interpretation of its terms, an action brought pursuant to state law will be preempted by federal labor laws." *Id.* Both claims and defenses "must be considered in determining whether resolution of a state law claim requires construing the relevant collective bargaining agreement." *Id.* (citing *Jones v. Caterpillar Tractor Co.,* 241 Ill. App. 3d 129, 137 (1993)).

¶ 36    Plaintiffs argue that dismissal of their amended complaint was improper where defendants failed to identify any CBA term which is subject to dispute or interpretation. Citing the *Wisconsin Central, Ltd. v. Shannon*, 539 F. 3d 751 (7th Cir. 2008) and *Basa v. Rizza Chevrolet, Inc.*, 750 F. Supp. 2d 987 (N.D. Ill. 2010), plaintiffs contend that "it would be premature to find that a plaintiffs' statutory state law claim requires interpretation of the CBA when the court does not know whether any provisions of the CBA are in dispute." As we explain below, neither of these cases are persuasive here. See *Ramette v. AT&T Corp.*, 351 Ill. App. 3d 73, 83 (2004) (federal appellate and district court decisions may be considered persuasive but are not binding authority).

¶ 37    In *Wisconsin Central, Ltd.*, a railroad company sought a declaratory judgment and injunctive relief after the Illinois Department of Labor (IDOL) began investigating claims that the company violated overtime regulations under the IMWL. 539 F.3d at 755-56. In particular, the company sought a declaratory judgment that the Railway Labor Act (RLA) and applicable collective bargaining agreements preempted its employees from enforcing the overtime provisions of the IMWL. The district court found for the employer, concluding that the determination of whether the company had violated the IMWL would require interpreting the applicable collective bargaining agreements. The Seventh Circuit reversed, holding that the district court lacked

jurisdiction because the claim was not ripe for adjudication. *Id.* at 761. The court held that for an entitlement to overtime to be "at issue" and for preemption to apply, there must be an actual dispute between the parties as to the interpretation of the relevant terms of the collective bargaining agreement. *Id.* at 760. According to the Seventh Circuit, "preemption under the RLA will only occur if the parties dispute the CBAs' terms, and even then, arguably only if the dispute is relevant as to liability as opposed to damages[.]" *Id.* The Seventh Circuit concluded that without an identification of a dispute between the parties concerning terms or provisions in the collective bargaining agreement, it was premature for the district court to find preemption. *Id.*

¶ 38   *Wisconsin Central, Ltd.* is procedurally distinct from the present case. There, the IDOL had not yet adjudicated any claims or determined the rights of the parties. The dispute was not developed enough to determine whether any provision of the CBAs were at issue and therefore, whether preemption would bar the IMWL claims. Here, there is an active dispute between the parties in which the plaintiffs point to the precise provisions of the CBAs which they allege Scrub has failed to follow.

¶ 39   In *Basa*, the defendant argued that the plaintiff's claims for unpaid overtime in violation of the IMWL were preempted by section 301 of LMRA because the employment relationship between the plaintiff and the defendant was governed by a collective bargaining agreement. 750 F. Supp. 2d at 988. However, the plaintiff's complaint made no reference to the CBA. *Id.* The district court found in favor of the plaintiff, finding that the "defendant [did] not identify any disagreement with plaintiff over the meaning of any CBA provisions which would necessitate an interpretation of the CBA." *Id.* at 989.

¶ 40   Unlike *Basa*, plaintiffs in this case filed the CBA as part of Exhibit 1 to their amended complaint, incorporated it by reference, and cited to its sections. Even so, plaintiffs argue that there

is no true dispute over the meaning of the CBA because there is no debate over the definition of terms such as "time and a half." However, as defendants correctly note, the CBA terms will need to be analyzed to resolve plaintiffs' claims. Contrary to plaintiffs' contention, the terms of their scheduling, hours, wages, and overtime are not obvious and cannot be ascertained without interpreting the CBA. A fact finder would have to refer to the CBA to determine the amount of wages due to each plaintiff. Specifically, a fact finder would need to determine whether plaintiffs worked a "regular weekly schedule," whether plaintiffs were entitled to overtime pay, whether overtime was calculated using the formula prescribed by the CBA, and whether defendants complied with the CBA in determining overtime payments.

¶ 41    Plaintiffs argue that no interpretation of the CBA is required to resolve this dispute but, rather, the court can simply examine the relevant payroll records to find their pay rate. Plaintiffs' argument fails to consider that the CBA applies different wage rates for different times and days as well defines overtime based on the "regular workweek," which may or may not be 40 hours per week. Specifically, the CBA defines overtime as work "in excess of forty (40) hours in one workweek or all work in excess of the regular weekly schedule of the employee." Thus, to determine whether defendants violated the Wage Act, a finder of fact would have no choice but to refer to Article IV of the CBA pertaining to "Wages" to determine the wage rate that applied to the individual plaintiffs. To ascertain whether defendants' payment of  overtime wages violated the Wage Act, a court would have to determine the pay scale for each plaintiff, the amount of overtime each plaintiff worked during the relevant time period, and calculate those figures using the formula prescribed by the CBA. As such, plaintiffs' claims cannot be resolved without interpretation of the CBA.

¶ 42    Next, plaintiffs argue that the Wage Act "provides greater protection than does the CBA" and forms a separate statutory basis for plaintiffs' right to payment. We find plaintiffs' argument unavailing. As this court noted in *Glasper*, "[a]lthough the Wage Act does provide standard requirements for employers that ascertain the work week, wages, and overtime, those requirements are generally provided in the absence of a CBA" governing those terms. *Glasper*, 2021 IL App (1st) 200764, ¶ 50.

¶ 43    In *Gelb*, this court found that it would have to consult and interpret the collective bargaining agreement as to the plaintiff's overtime wage claim. *Gelb*, 356 Ill. App. 3d at 693. The *Gelb* court found the pay scale for the plaintiff, the deductions to which plaintiff objected, and the amount of overtime plaintiff worked during the relevant time would need to be calculated and therefore, those tasks were better left to an arbitrator as set forth in the collective bargaining agreement. *Id.* at 693-94. Following the reasoning of *Gelb*, this court in *Kostecki*, 361 Ill. App. 3d at 370, held that the plaintiffs' overtime wages claim arose out of the CBA because it set forth, *inter alia*, the specific rates of overtime pay and how to calculate it. Thus, a fact finder would have to interpret the terms of the CBA to resolve the plaintiffs' claims. *Id.*

¶ 44    Both *Gelb* and *Kostecki* involved CBAs with specific provisions as to when overtime had to be paid. Hence, this court found that a finder of fact would need to interpret the agreements to determine whether the plaintiffs were owed overtime compensation. Similarly, in this case, a CBA exists, and no independent claim is raised by plaintiffs that is not covered by the CBA. The CBA here included specific provisions defining the work week, overtime, and wages which were at issue. To resolve the underlying statutory claim, a fact finder would have to interpret the CBA terms and therefore, plaintiffs' wage claims arise from the CBA.

¶ 45    Plaintiffs contend that circuit court erred in relying on cases such as on *Gelb*, 356 Ill. App. 3d at 692, *Kostecki*, 361 Ill. App. 3d at 362, and *Carletto v. Quantum Foods*, No. 1-05-3163, 2006 WL 2018250 (unpublished order under Illinois Supreme Court Rule 23), because they were overruled by *Spoerle v. Kraft Foods Global, Inc.*, 614 F.3d 427 (7th Cir. 2010) and *Whitmore v. Kraft Foods*, 798 F. Supp. 2d 917 (N.D. Ill 2011). We again reiterate that federal appellate and district court decisions may be considered persuasive but are not binding on this court. See *Ramette*, 351 Ill. App. 3d at 83. Moreover, *Spoerle* and *Whitmore* did not overturn *Gelb*, *Kostecki*, and *Carletto*, but simply stood for the proposition that the CBA cannot trump rights to which employees are entitled under state law.

¶ 46    In *Spoerle*, the plaintiffs sought to recover compensation for time spent doffing and donning safety equipment. 614 F.3d at 428. The question before the Seventh Circuit was what happens when the terms of a CBA conflict with state law. *Id.* The Seventh Circuit held that "[m]anagement and labor acting jointly (through a CBA) have no more power to override state substantive law than they have when acting individually." *Id.* at 430. Later in *Whitmore*, the District Court considered a claim that relied on a provision in a collective bargaining agreement that conflicted with state law requiring payment for donning and doffing. 798 F. Supp. 2d at 921-22. The District Court held that the provision was unenforceable because the "CBA cannot override a generally applicable state wage-and-hour statute." *Id.* In contrast, plaintiffs here have not alleged that the terms of the CBA are unenforceable. There is no provision in the CBA that is alleged to be unenforceable under state law. As such, we cannot ignore the terms of the CBA.

¶ 47    Lastly, defendants maintain that the grievance and arbitration procedure provided in the CBA have not been exhausted by plaintiffs and therefore, dismissal of plaintiffs' amended complaint was proper. The circuit court did not address this issue when granting defendants' 2-

619 motion to dismiss. Nevertheless, we may further affirm the circuit court's judgment on any basis that is supported by the record. *Stoll*, 378 Ill. App. 3d at 1051 (2008). The "[f]ederal labor policy provides that when resolving a state law claim that is dependent on the analysis of the terms contained in the agreement, the claim must either be arbitrated as required by the CBA or dismissed as preempted under section 301 of LMRA." *Glasper*, 2021 IL App (1st) 200764, ¶ 51. "We have held that when a CBA establishes a grievance and arbitration procedure for disputes arising out of the CBA and the court has determined that the claim on its face is governed by the contract, an employee must attempt to exhaust their contractual remedies before seeking judicial relief." *Id.* "The exhaustion of administrative remedies is a procedural prerequisite to maintaining a section 301 action." *Id.* Here, the CBA outlines a three-step procedure for employees to follow if they have a grievance. Because the claims and respective remedial procedures were clearly addressed by the CBA and plaintiffs failed to avail themselves of this administrative remedy, we find that the circuit court's dismissal was proper on that basis as well.

¶ 48                                    III. CONCLUSION

¶ 49    For the reasons stated, we affirm the judgment of the circuit court.

¶ 50    Affirmed.