DANA GELB *et al.*, Indiv. and on Behalf of a Class of Similarly Situated Persons, Plaintiffs-Appellants, v. AIR CON REFRIGERATION AND HEATING, INC., *et al.*, Defendants-Appellees.

First District (4th Division)    No. 1—03—2275

Opinion filed February 24, 2005.—Rehearing denied April 22, 2005.

Jac A. Cotiguala and Luanne M. Galovich, both of Jac A. Cotiguala & Associates, Robin B. Potter, of Potter & Schaffner, P.C., Joel M. Hellman, and Charles Pressman, all of Chicago, for appellants.

Frederick V. Lochbihler, of Chapman & Cutler, of Chicago, for appellee Air Con Refrigeration and Heating, Inc.

David J. Lloyd, of Rohlfing & Oberholzer, of Chicago, for appellee Hill Mechanical Corporation.

James P. DeNardo, of McKenna Storer, of Chicago, for appellee Chicagoland Sheet Metal Contractors Association.

Douglas A. Graham, of Chicago, for appellee Exelon Services, Inc.

Ronald J. Passarelli and Amy J. Pena, both of Andrews, Koehler & Passarelli, P.C., of Chicago, for appellee F.E. Moran, Inc.

William H. Hrabek, Jr., of Goldstine, Skrodzki, Russian, Nemec & Hoff, Ltd., of Burr Ridge, for appellee AMS Mechanical Systems, Inc.

Michael Daley, of Daley & George, Ltd., of Chicago, for appellee Sheet Metal Workers Union Local 73.

Joan Meyers, of Johnson & Colmar, of Chicago, for appellee Atomatic Mechanical Services, Inc.

Edward N. Druck, of Franczek Sullivan, P.C., of Chicago, for other appellees.

JUSTICE GREIMAN delivered the opinion of the court:

This cause comes to us on an appeal subsequent to our remandment to the trial court in order to allow the plaintiffs to bring a motion for class certification. See *Gelb v. Air Con Refrigeration & Heating, Inc.*, 326 Ill. App. 3d 809 (2001). On remand, the trial court dismissed plaintiffs' complaint on defendants' motion, and plaintiffs now appeal. For the reasons that follow, we affirm.

Plaintiff Dana Gelb (Gelb) initially filed suit in April 2000, alleging that several of the defendants conspired to violate and had been violating, since January 1997, the Illinois Minimum Wage Law (Wage Law) (820 ILCS 105/1 *et seq.* (West 1998)) by paying lower overtime wages than those mandated by the statute. Gelb sought an accounting of lost wages for himself and other similarly situated individuals, payment of those lost wages, a declaration that the defendants' activities were unlawful, statutory penalties, interest, and attorney fees.

Soon after the complaint was filed, defendants Air Con Refrigeration & Heating, Inc. (Air Con), and Hill Mechanical Corp. (Hill Mechanical) offered Gelb a settlement, consisting of his back wages plus interest, statutory penalties, and attorney fees. Gelb rejected the offer and Air Con, Hill Mechanical, and defendant Chicagoland Sheet Metal Contractors Association (Association) thereafter filed a joint motion to dismiss pursuant to sections 2—615 and 2—619(a) of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619(a) (West 2000)), arguing that the settlement offer to Gelb removed the case or controversy as to Gelb and rendered the case moot. The trial court granted the motion and Gelb appealed.

This court reversed the trial court's dismissal order and remanded,

finding that Gelb had not been allowed sufficient time to file a motion for class certification before defendants had tendered their settlement offer and, thus, that the settlement offer did not render the case moot. *Gelb*, 326 Ill. App. 3d at 821-22.

On remand, plaintiffs filed a second amended complaint, alleging that they had been employed by several of the defendants and that: (1) all named defendants violated section 4a of the Wage Law by failing to pay time-and-a-half for overtime hours worked by plaintiffs, specifically by making deductions from plaintiffs' regular wages prior to multiplying overtime hours by the premium rate (count I); and (2) as members of the Association, which acted as its members' bargaining agent for purposes of negotiating with the plaintiffs' union, several of the defendants conspired to calculate and pay overtime wages below the rate required under the Wage Law (count II). Plaintiffs also proposed to join several nonemployer defendants and allege that each of them had been acting pursuant to a common scheme with regard to calculating and paying overtime wages, and to seek joint and several liability against each defendant for all unpaid wages, punitive damages, and prejudgment interest (count III). The trial court denied plaintiffs leave to add count III to the complaint.

Defendants Exelon and Hill Mechanical tendered settlement offers to plaintiffs Gelb and John Hill (Hill), consisting of the allegedly unpaid overtime wages due, prejudgment interest, statutory and punitive damages, and attorney fees. Gelb and Hill each rejected the defendants' offers.

Several defendants filed motions to dismiss pursuant to section 2—619 of the Code of Civil Procedure. 735 ILCS 5/2—619 (West 2002). Air Con, Hill Mechanical, Exelon, and the Association argued that plaintiffs were preempted from seeking damages in state court because their claim was governed by the collective bargaining agreement (collective bargaining agreement) the plaintiffs' union had entered into with the Association, pursuant to section 301 of the Labor Management Relations Act (29 U.S.C. § 185 (2000)) (LMRA) and section 8 of the National Labor Relations Act (29 U.S.C. § 158 (2000)) (NLRA). Air Con, Hill Mechanical, Exelon, and the Association also contended that plaintiffs lacked standing to seek the remedies of interest on unpaid wages and punitive damages and that plaintiffs Gelb's and Hill's individual claims against them should be dismissed because they had tendered settlement offers to each plaintiff, rendering their individual actions moot. In another motion, the same defendants argued that the complaint should be dismissed because plaintiffs failed to join their union as a necessary party, because count II failed to allege a conspiracy, and because the Wage Law's statutory scheme did not

encompass conspiracy claims. Defendant F.E. Moran, Inc., filed a similar motion.

Defendant Atomatic Mechanical Services, Inc. (Atomatic), filed its own motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2002)), arguing that plaintiffs' complaint failed to state a cause of action upon which relief could be granted, in that count II failed to allege acts sufficient to constitute a conspiracy. Attached to defendants' motions to dismiss were copies of the collective bargaining agreement, which provided tables of scaled wage deductions for union members as well as a grievance clause requiring employees to submit complaints to arbitration. In all, 24 other defendants joined the motions to dismiss.

The trial judge granted the motions pursuant to sections 2—619(a)(1) and 2—619(a)(9), finding that: (1) Gelb's and Hill's individual claims were moot as the result of the settlement offers by Exelon and Hill Mechanical; (2) under the Wage Law, plaintiffs did not have standing to seek punitive damages and their conspiracy claim was precluded; (3) plaintiffs' Wage Law claims were preempted by federal law because assigning liability would require interpretation of the collective bargaining agreement; and (4) plaintiffs were barred from pursuing legal action because they failed to pursue the administrative remedies provided in the collective bargaining agreement. Plaintiffs' motion for class certification was still pending at the time of dismissal.

On appeal, plaintiffs contend that: (1) their claims under the Wage Law are not preempted by federal labor laws; (2) they were not required to submit their grievances to arbitration under the collective bargaining agreement; (3) the parties that plaintiffs sought to join that did not directly employ the plaintiffs could be joined as coconspirators for purposes of a class action; (4) the trial court abused its discretion in denying plaintiffs leave to attach their proposed count III to the complaint; (5) they may seek punitive damages under the Wage Law; and (6) the trial court erred in dismissing the individual claims by Gelb and Hill as moot. For the reasons that follow, we affirm.

A defendant may move for dismissal on the grounds that the court in which a suit has been filed lacks jurisdiction to consider the matter (735 ILCS 5/2—619(a)(1) (West 2002)) or that the claim is barred by another affirmative matter (735 ILCS 5/2—619(a)(9) (West 2002)). Such a motion admits the legal sufficiency of the plaintiff's cause of action, and we review the granting of such a motion *de novo. Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367-68 (2003).

Plaintiffs initially contend that their claims for underpaid and unpaid overtime wages are based on rights derived from the Wage

Law and not from the collective bargaining agreement and that, therefore, they are not preempted by federal labor laws, namely, the LMRA and the NLRA. Federal jurisprudence holds that section 301 of the LMRA and section 8 of the NLRA preempt state tort claims when the existence of a duty on the part of the defendant is dependent upon an interpretation of a collective bargaining agreement. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-11, 85 L. Ed. 2d 206, 215, 105 S. Ct. 1904, 1911 (1985); *National Metalcrafters v. McNeil*, 784 F.2d 817, 827-28 (7th Cir. 1986). Section 301 grants exclusive jurisdiction to federal district courts over suits for violations of contracts between employers and labor organizations representing their employees (29 U.S.C. § 185(a) (2000)), while section 8 grants the federal government exclusive regulation of labor relations (29 U.S.C. § 158(a)(1), (a)(5) (2000); *National Metalcrafters*, 784 F.2d at 826).

Plaintiffs argue that allowing the collective bargaining agreement to govern would allow private agreements between employers and unions to supersede the Wage Law and that their claims were brought solely under that provision to assert a nonnegotiable right to statutorily required overtime wages. Plaintiffs further argue that a trial court would not have to interpret the collective bargaining agreement to resolve the case but, rather, read the requirements of the Wage Law and examine the defendants' relevant payroll records, copies of which were attached to plaintiffs' complaint. Defendants counter that the means by which they paid overtime wages were governed by the collective bargaining agreement and that they adhered to those terms in calculating and paying those wages, and that plaintiffs' Wage Law claims are thus preempted.

■ In general, where a collective bargaining agreement exists between employers and employees who are parties to litigation, their disputes fall within the exclusive purview of federal labor laws, not state laws, in order to ensure uniform interpretation of collective bargaining agreements. *National Metalcrafters*, 784 F.2d at 823; *Baker v. Kingsley*, 387 F.3d 649, 657 (7th Cir. 2004). However, not every suit concerning the terms of employment or tangentially involving a provision of a collective bargaining agreement is preempted by federal labor laws. *Allis-Chalmers Corp.*, 471 U.S. at 211, 85 L. Ed. 2d at 215, 105 S. Ct. at 1911.

In order to determine whether a claim filed pursuant to a state statute or common law tort is preempted, we examine the character of the claim. *Baker*, 387 F.3d at 657. Where a matter is purely a question of state law and is entirely independent of any understanding of the terms of a collective bargaining agreement, it may proceed as a state-law claim. *Livadas v. Bradshaw*, 512 U.S. 107, 124-25, 129 L. Ed. 2d

93, 110, 114 S. Ct. 2068, 2079 (1994). By contrast, where the resolution of a state-law claim depends on an interpretation of the collective bargaining agreement, the claim will be preempted. *In re Bentz Metal Products Co.*, 253 F.3d 283, 285 (7th Cir. 2001). Where claims are predicated on rights addressed by a collective bargaining agreement, and depend on the meaning of, or require interpretation of its terms, an action brought pursuant to state law will be preempted by federal labor laws. See *Gonzalez v. Farmington Foods, Inc.*, 296 F. Supp. 2d 912, 936 (N.D. Ill. 2003). Defenses, as well as claims, must be considered in determining whether resolution of a state-law claim requires construing of the relevant collective bargaining agreement. *Jones v. Caterpillar Tractor Co.*, 241 Ill. App. 3d 129, 137 (1993).

■ In this case, plaintiffs filed suit contending that defendants failed to comply with the Wage Law, which states that "no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1½ times the regular rate at which he is employed." 820 ILCS 105/4a(1) (West 2000). The Wage Law also states that none of its provisions are to "interfere with, impede, or in any way diminish the right of employees to bargain collectively with their employers *** in order to establish wages or other conditions of work in excess of the applicable minimum standards." 820 ILCS 105/14 (West 2000).

■ Defendants responded that they complied with the terms of the collective bargaining agreement between them and plaintiffs' union in calculating and paying overtime wages. The collective bargaining agreement states, in article VI, section 4, that the first four hours of overtime "shall be paid at one and one-half times the regular straight time hourly rate," and that overtime worked beyond four hours and on holidays would be paid at double the straight time rate. The collective bargaining agreement also provided sample wages for various pay scales within the union, with proportionate deductions from each hourly wage for union education funds, pension funds, industry funds, and savings plans.

Here, in order to determine whether defendants had violated the Wage Law, a finder of fact would have no choice but to refer to the collective bargaining agreement in order to determine the amount of wages that were due and owing to the individual plaintiffs and the other members of the proposed class. In order to ascertain whether defendants' compliance with the collective bargaining agreement in paying overtime wages violated the Wage Law, a court would have to determine the pay scale for each plaintiff, with the relevant deductions to which plaintiffs objected, and the amount of overtime each

plaintiff worked in the relevant time period, and calculate those figures using the formula prescribed by the collective bargaining agreement. Moreover, the collective bargaining agreement provided for overtime compensation that, in some instances, exceeded the minimum rate mandated by the Wage Law.

Because defendants asserted compliance with the collective bargaining agreement as a defense, the resolution of plaintiffs' Wage Law claim is inextricably bound up with the terms of the collective bargaining agreement, and a court would inevitably have to interpret them. Accordingly, we find that plaintiffs' Wage Law claim is preempted by federal labor laws and that dismissal on this ground was warranted.

■ Plaintiffs next argue that they were not required to submit their grievances to arbitration under the collective bargaining agreement and that the trial court's dismissal was therefore erroneous.

Article I, section 1.1, of the collective bargaining agreement states that it "covers the rates of pay, rules, and working conditions of all employees of the Employer[s] engaged in" sheet metal work. Article X, section 10.1, states that "[g]rievances of the Employer or Union, arising out of interpretation or enforcement of this Agreement, shall be settled between the Employer directly involved, and the duly authorized representative of the Union," and that grievances must be raised within 30 days of the occurrence giving rise to the grievance or 30 days of the complainant's first knowledge of it. Article X further provides that grievances are to be heard by a joint arbitration board, which is charged with resolving grievances. Appeals from such decisions are reviewed by a panel consisting of a union representative, an employers' association representative, and an impartial third party, whose decisions are binding on employees, employers, and the union.

The Uniform Arbitration Act applies to all agreements to arbitrate, including those that appear in collective bargaining agreements, unless a statute specifically provides for an exception. 710 ILCS 5/1 *et seq.* (West 2000); *Jupiter Mechanical Industries, Inc. v. Sprinkler Fitters & Apprentices Local Union No. 281,* 281 Ill. App. 3d 217, 220 (1996). Section 2(b) of the Arbitration Act gives courts the authority to stay arbitration proceedings where a party can show that there was no agreement to arbitrate. 710 ILCS 5/2(b) (West 2002). Arbitration of collective bargaining disputes serves salutary purposes as a substitute for litigation as well as a complement to negotiation and an expedient in averting economic strife between the parties. *Jupiter Mechanical Industries,* 281 Ill. App. 3d at 221. In general, where interpretation of a collective bargaining agreement is involved, courts will presume arbitration. Arbitration is a matter of contract, and a party cannot be

required to arbitrate any dispute that he or she has not agreed to arbitrate. *Jupiter Mechanical Industries*, 281 Ill. App. 3d at 221.

Under federal law, whether the parties to a collective bargaining agreement agreed to arbitrate a particular matter is for the courts to decide, without regard to the merits of the claim. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649-50, 89 L. Ed. 2d 648, 656, 106 S. Ct. 1415, 1418-19 (1986). The exhaustion of administrative remedies is a procedural prerequisite to maintaining a section 301 action. *Gonzalez*, 296 F. Supp. 2d at 936. Accordingly, federal labor policy holds that an employee is generally required to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement. *Gonzalez*, 296 F. Supp. 2d at 936. In order to avoid required administrative exhaustion, an employee must establish a breach of the union's duty of fair representation. *Gonzalez*, 296 F. Supp. 2d at 936.

Where a collective bargaining agreement establishes a grievance and arbitration procedure for disputes arising out of the agreement, an employee alleging a violation of the collective bargaining agreement must attempt to exhaust his or her contractual remedies before seeking judicial relief. *Uehlein v. Shwachman*, 156 Ill. App. 3d 274, 277 (1987). However, the mere existence of a dispute between an employee and an employer is insufficient to make the disputed matter subject to arbitration procedures of the collective bargaining agreement. *Daniels v. Board of Education of the City of Chicago*, 277 Ill. App. 3d 968, 972 (1996). The court must consider whether the claim is one which, on its face, is governed by the contract. If it is, the exclusive remedy is to follow the grievance procedures. If not, the complainant may seek judicial relief. *Daniels*, 277 Ill. App. 3d at 972. Where a collective bargaining agreement adequately addresses an aspect of employee compensation or other working conditions, a state statute will defer to the collective bargaining agreement's grievance procedures. *Daniels*, 277 Ill. App. 3d at 973. Where an employee's claim arises entirely out of a collective bargaining agreement, the employee lacks standing to pursue judicial relief without first exhausting any remedies provided for in the agreement. *Uehlein*, 156 Ill. App. 3d at 277.

Having found that plaintiffs' action for wages is inextricably bound up in the terms of the collective bargaining agreement and that their state-law claim is therefore preempted by federal law, we conclude that plaintiffs were required to exhaust any administrative remedies before maintaining any sort of court action. In order to avoid that requirement, plaintiffs were required to establish that their union breached its duty of fair representation. See *Gonzalez*, 296 F. Supp. 2d

at 936. They have made no attempt to do so and, accordingly, are bound by the arbitration provision of the Collective bargaining agreement.

Plaintiffs rely on the case of *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 142 L. Ed. 2d 361, 119 S. Ct. 391 (1998), for the proposition that worker rights derived by statute, specifically the right to a judicial forum for seeking redress of employee discrimination, cannot be waived through a union's assent to a general grievance clause inserted in a collective bargaining agreement. The Supreme Court held in *Wright* that an employee union member who was subject to a collective bargaining agreement that contained a general arbitration clause was not barred from suing his employer under the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.* (2000)) because the dispute the employee sought to litigate ultimately concerned the meaning of the federal statute and not the application or interpretation of the collective bargaining agreement and was distinct from any right conferred by the collective bargaining agreement. *Wright*, 525 U.S. at 79, 142 L. Ed. 2d at 370, 119 S. Ct. at 396. The Court also held that for disputes involving statutorily granted rights against discrimination to be subject to arbitration, the collective bargaining agreement must contain explicit language, with reference to particular statutes, explaining that redress for grievances involving those rights must be sought through arbitration. *Wright*, 525 U.S. at 80, 142 L. Ed. 2d at 371, 119 S. Ct. at 396.

We find the immediate case distinguishable. *Wright* involved a suit by an employee who was refused work assignments because he had previously settled compensation claims that declared him "permanently disabled," despite an assertion by his doctor that he could return to work. The Court found that the employee could not waive his right to sue for discrimination without specific language in the collective bargaining agreement because the cause of action he asserted arose not from a contract, but from the ADA, and was distinct from any right conferred by the collective bargaining agreement. *Wright*, 525 U.S. at 79, 142 L. Ed. 2d at 370, 119 S. Ct. at 396.

Plaintiffs argue that their cause of action is rooted purely in the Wage Law and not the collective bargaining agreement and therefore qualifies for the *Wright* exception to mandatory arbitration. We disagree. Here, plaintiffs suffered no discrimination and were not denied work, nor did they allege such action by defendants. Their only allegation was that they were not paid adequate overtime wages, which are specifically addressed as a matter covered by the grievance procedure in the collective bargaining agreement. Unlike *Wright*, the cause of action in this case is explicitly discussed in the collective

bargaining agreement's arbitration clause, to which plaintiffs, through their union, agreed to be bound. Moreover, the collective bargaining agreement provides that employers will pay employees, in some instances, overtime rates in excess of those mandated by the Wage Law. Considering that the matter plaintiffs seek to litigate is explicitly addressed by the collective bargaining agreement and its grievance procedure, and that arbitrators would be in a better position to interpret the terms of the collective bargaining agreement and determine compliance or violation, we find that plaintiffs were required to exhaust their administrative remedies before filing suit in court.

■ Plaintiffs next contend that the trial court erred in dismissing count II of their complaint because all the named employer-defendants took actions in furtherance of a conspiracy to violate the Wage Law and thus may be held jointly and severally liable. Plaintiffs also contend that all employees of the employer-defendants should be granted class certification on that same basis. We do not agree.

The Illinois Supreme Court has repeatedly held that claims by employees against their employers sounding in civil conspiracy are preempted by federal labor laws where the rights employees seek to assert are the subject of a collective bargaining agreement. *Bartley v. University Asphalt Co.*, 111 Ill. 2d 318, 332 (1986); *Gendron v. Chicago & North Western Transportation Co.*, 139 Ill. 2d 422, 444-45 (1990). Moreover, multiple employers adhering to the terms of a collective bargaining agreement can rarely, if ever, serve as the basis for a conspiracy claim. Where plaintiffs bring conspiracy claims based solely on the existence of a collective bargaining agreement concerning subjects of mandatory bargaining, courts generally hold that such allegations are insufficient to overcome a statutory exemption from prosecution under section 8(d) of the NLRA. 29 U.S.C. § 158(d) (2000); *Local Union No. 189 v. Jewel Tea Co.*, 381 U.S. 676, 14 L. Ed. 2d 640, 85 S. Ct. 1596 (1965); *Mid-America Regional Bargaining Ass'n v. Will County Carpenters District Council*, 675 F.2d 881, 886-87 (7th Cir. 1982). Multiemployer bargaining is a well-established, important, and pervasive method of collective bargaining, offering advantages to both management and labor. *Brown v. Pro Football, Inc.*, 518 U.S. 231, 240, 135 L. Ed. 2d 521, 532, 116 S. Ct. 2116, 2122 (1996).

The Supreme Court, in analyzing potential antitrust and conspiracy liability for multiple employers negotiating terms of a collective agreement with a union, has held that allowing prosecution for all such activity would invite unfair labor charges for discussing and reaching common understandings or agreements. *Brown*, 518 U.S. at 241-42, 135 L. Ed. 2d at 533, 116 S. Ct. at 2122-23. Multiple employ-

ers in a given bargaining unit agreeing among themselves and with a representative union is basic to the collective bargaining process, and evaluating any such mutual understandings to determine their legality is, under federal labor laws, the exclusive province of the National Labor Relations Board. *Brown,* 518 U.S. at 242, 135 L. Ed. 2d at 533, 116 S. Ct. at 2123. Employers should not be exposed to prosecution for conduct that takes place during and immediately after a collective bargaining negotiation, that grew out of and was directly related to the bargaining process, involves a matter that the parties were required to negotiate collectively, and concerns only the parties to the collective bargaining relationship. *Brown,* 518 U.S. at 250, 135 L. Ed. 2d at 538, 116 S. Ct. at 2127.

Wages lie at the very heart of those subjects about which employers and unions must bargain, and labor laws contemplate agreements between unions and employers in multiemployer bargaining units. *United Mine Workers of America v. Pennington,* 381 U.S. 657, 664, 14 L. Ed. 2d 626, 633, 85 S. Ct. 1585, 1590 (1965). In order for employers to incur conspiracy or antitrust liability, their activity must be of a kind that they would likely undertake in the absence of a union rather than in cooperation with it, such as setting prices or manipulating a given market. *Smitty Baker Coal Co. v. United Mine Workers of America,* 620 F.2d 416, 425 n.21 (4th Cir. 1980).

Here, plaintiffs sought to join all defendant-employees in a class action for conspiracy solely on the basis of their participation in negotiations with the plaintiffs' union and their subsequent adherence to the resulting collective bargaining agreement. Illinois and federal law are consistent in holding that employers who negotiate with a representative union and agree on a mandatory subject of collective bargaining, in this case wages, may not be held liable on the basis of conspiracy or antitrust violations. Plaintiffs have effectively asked the Illinois courts to penalize the employer-defendants for engaging in an activity, collective bargaining with plaintiffs' union, that they were required to engage in under federal law. This court will not contravene statute and precedent by indulging plaintiffs' theory of liability and reversing the trial court's order of dismissal.

On a similar basis, we uphold the trial court's order denying plaintiffs leave to attach count III to their complaint. The common scheme that plaintiffs sought to allege, specifically that the nonemployer defendants collectively calculated and paid overtime wages in violation of the Wage Law, rests on those employers having collectively bargained with plaintiffs' union and abiding by the terms of the resultant collective bargaining agreement. Having established that plaintiffs could not seek liability on such a theory, we conclude that the trial court's denial of leave to file count III was proper.

■ Plaintiffs next contend that the trial court erred in ruling that they could not seek to recover punitive damages from defendants and argue that the statute provides punitive damages as a remedy for civil suits brought by employees. We disagree.

The Wage Law provides that employees may recover unpaid wages in a civil action and that an agreement between an employee and employer to work for less than minimum wage is no defense to such an action. 820 ILCS 105/12(a) (West 2000). The same section further provides that an aggrieved employee may assign a claim for unpaid wages to the Director of Labor, who may bring a legal action to collect unpaid wages. Any employer found in violation as the result of such an action may be liable to the Department of Labor for 20% of the employer's underpayment of wages and may be liable to the employee for punitive damages in the amount of 2% of the amount of underpayments. 820 ILCS 105/12(a) (West 2000).

In interpreting a statute, the primary rule is to give effect to the true intent and meaning of the legislature. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990). The best evidence of legislative intent is the language used by the legislature, and where an act is clear and unambiguous, a court may not depart from the plain language and meaning of a statute by reading into it exceptions, limitations, or conditions that the legislature did not express. *Kraft*, 138 Ill. 2d at 189. In ascertaining a statute's meaning, courts should read it as a whole with all the relevant parts considered. *Kraft*, 138 Ill. 2d at 189.

The statute only mentions punitive damages payable to employees in the context of an action assigned to and subsequently brought by the Director of Labor. It makes no provision for employees to recover punitive damages aside from assigning their claims to the Director. Here, there is no indication that plaintiffs ever assigned their claims to the Director. Under these circumstances, and according the statute its plain meaning, the only conclusion we come to is that plaintiffs may not recover punitive damages from employers without first assigning their claims to the Director of Labor for litigation. Accordingly, the trial court's ruling was not erroneous.

■ Plaintiffs lastly contend that the trial court erred in dismissing plaintiffs Gelb's and Hill's individual claims as moot in light of the fact that the court had yet to rule on their motion for class certification. This court has already remanded this cause once to allow plaintiffs to seek class certification despite individual offers of settlement by some of the defendant-employers. We see no need to do so again.

An action is moot if no actual controversy exists or where events occur that make it impossible for the court to grant effectual relief. *Yu*

*v. International Business Machines Corp.*, 314 Ill. App. 3d 892, 898 (2000). Where a defendant tenders the requested relief, plus interest, to a plaintiff who seeks to represent the interests of a class of similarly situated plaintiffs, the case or controversy concerning the offered plaintiff is nullified and that plaintiff is no longer an appropriate representative of the interests of the class. *Yu*, 314 Ill. App. 3d at 898; *Hillenbrand v. Meyer Medical Group, S.C.*, 308 Ill. App. 3d 381, 391-92 (1999). Plaintiffs should not be allowed to perpetuate controversies by merely refusing defendants' tenders. *Hillenbrand*, 308 Ill. App. 3d at 389.

In general, a proper tender to a named plaintiff before a class is certified mandates dismissal of the action. However, where plaintiffs have pursued class certification with reasonable diligence and such a motion is pending, a case will not become moot merely because a tender has been made. To rule otherwise in every instance would allow a defendant to avoid a class action suit by simply tendering payments to the named plaintiffs prior to the court's ruling on a motion for certification. *Hillenbrand*, 308 Ill. App. 3d at 392.

While a case may not become moot merely because a tender settlement offer has been made while plaintiffs sought class certification (*Hillenbrand*, 308 Ill. App. 3d at 392), a trial court may grant a motion to dismiss for failure to state a cause of action before it determines class certification issues (*Bruemmer v. Compaq Computer Corp.*, 329 Ill. App. 3d 755, 764 (2002)). Illinois law holds that a class action complaint should be dismissed at the pleading stage if the complaint fails to meet the statutory requirements for class certification. *Bruemmer*, 329 Ill. App. 3d at 764.

When this particular case was previously before us on appeal, we noted that some of the defendants had tendered settlement offers to the named plaintiffs and the trial court dismissed the complaint before plaintiffs had a reasonable opportunity to seek class certification. This court held that "the interests of the absent class as well as the integrity of the judicial process, namely, allowing a plaintiff a reasonable opportunity to file a motion for certification, outweigh any concerns of whether plaintiff has been tendered the full amount of his claim or whether he has even filed a motion for certification." *Gelb*, 326 Ill. App. 3d at 822. On that basis, we reversed the trial court's initial dismissal and remanded to allow plaintiffs an opportunity to file a motion for class certification. On remand, plaintiffs did so, but the trial court never decided the issue before granting defendants' most recent motion to dismiss.

We see no need for another reversal in this instance. Plaintiffs sought class certification on the legal theory that all employer-

defendants had participated in a common scheme to violate the Wage Law by means of their assent to be bound by the collective bargaining agreement with plaintiffs' union. We have already concluded above that plaintiffs could not seek to assign liability or to obtain class action status on that basis. Having considered the merits of plaintiffs' individual complaints as well as the basis on which they sought class certification, we conclude that the trial court's grant of the motion to dismiss on this or any other ground was not erroneous.

For the foregoing reasons, we uphold the trial court's order of dismissal. The judgment of the circuit court is affirmed.

Affirmed.

THEIS and QUINN, JJ., concur.