NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240306-U

NO. 4-24-0306

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 17, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| JOSHUA ALLENBAUGH, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Peoria County |
| THE CITY OF PEORIA, | ) | No. 21MR725 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | James A. Mack, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Doherty and Grischow concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court affirmed the trial court's entry of summary judgment in defendant's favor because plaintiff failed to exhaust his remedies under the collective bargaining agreement before filing the present declaratory judgment action.

¶ 2       In August 2021, plaintiff, Joshua Allenbaugh, filed a declaratory judgment complaint against defendant, the City of Peoria (City), alleging that the City failed to comply with the terms of the Public Employee Disability Act (PEDA) (5 ILCS 345/0.01 *et seq.* (West 2020)) by denying Allenbaugh full pay after he was injured in the line of duty as a police officer. Allenbaugh moved for the entry of a declaratory judgment in his favor, and the City filed a motion for summary judgment, in which it argued that Allenbaugh's claim was governed by a collective bargaining agreement (CBA) between the City and the Peoria Police Benevolent Association (Association) that contained an exclusive grievance procedure. Ultimately, the trial court agreed with the City and entered summary judgment in its favor.

¶ 3        Allenbaugh appeals, arguing the trial court erred by entering summary judgment in favor of the City because his claim was based entirely upon rights granted under the PEDA and he was not required to exhaust his remedies by filing a grievance.

¶ 4        We disagree and affirm.

¶ 5                                I. BACKGROUND

¶ 6        This dispute centers on the meaning of the PEDA and the terms of a CBA. In order to understand the issues in this case, some background information about the relevant portions of both is helpful.

¶ 7        The PEDA applies to police officers and provides the following:

        "Whenever an eligible employee suffers any injury in the line of duty which causes him to be unable to perform his duties, he shall continue to be paid by the employing public entity on the same basis as he was paid before the injury, with no deduction from his sick leave credits, compensatory time for overtime accumulations or vacation, or service credits in a public employee pension fund during the time he is unable to perform his duties due to the result of the injury, but not longer than one year in relation to the same injury." 5 ILCS 345/1(b) (West 2020).

¶ 8        Article 34 of the CBA between the City and the Association is titled "Injured on Duty Leave" and contains the following provision, the meaning and applicability of which forms the basis of the dispute between the parties in this case.

        "SECTION 34.1 WORKER'S COMPENSATION OR LINE OF DUTY INJURIES: Whenever any employee suffers any injury or illness in the line of duty which causes him to be unable to perform his duties, he shall continue to be paid by the City in the manner and to the extent provided and required by 5 ILCS 345/1,

the Worker's Compensation Act and any other statutes applicable on the effective date of this contract. The parties agree that the one year period for IOD shall be calculated as one calendar year from the date of injury excluding any days the employee was on full police duty. An employee who has worked not less than 60 calendar days on light duty during the IOD period, will be eligible immediately following the expiration of the one (1) calendar year of IOD for an additional day of IOD leave or light duty leave (provided the employee otherwise qualifies for light duty under the terms of Article 32 of the Agreement) at the rate of one additional day for each two days of light duty worked during the IOD period but not to exceed sixty (60) calendar days."

¶ 9 The CBA also declares that the grievance procedure is the sole and exclusive method of resolving a dispute over the meaning of the CBA. Specifically, section 5.9 of the CBA provides the following: "Except as otherwise provided for, the procedure set forth in this Article shall be the sole and exclusive procedure for resolving any grievance, as defined in Section 5.1, which was or could have been raised by an employee covered by this Agreement or the Association." Section 5.1 of the CBA defines a grievance as follows: "A grievance is a dispute or difference of opinion concerning the meaning or interpretation of specific provisions of this Agreement or established past practice."

¶ 10 A. The Operative Declaratory Judgment Complaint and Motions To Dismiss

¶ 11 In August 2021, Allenbaugh filed his original complaint, seeking a declaratory judgment that the City failed to comply with the statutory provisions of the PEDA after Allenbaugh was injured in the line of duty. The City filed a motion to dismiss the complaint, arguing that (1) his claim was governed by the CBA, which contained an exclusive grievance procedure, and

(2) Allenbaugh's complaint failed to state facts with sufficient particularity to state a claim for declaratory judgment under the PEDA.

¶ 12        The trial court granted the City's motion but allowed Allenbaugh leave to file an amended complaint. Allenbaugh later filed an amended complaint, and the City filed another motion to dismiss based on substantially similar grounds. The court once again dismissed the complaint and granted leave to amend.

¶ 13        In June 2022, Allenbaugh filed a second amended verified petition for declaratory judgment (hereinafter the complaint), in which he alleged the following: (1) Allenbaugh had been a police officer employed by the City since October 2000; (2) on June 17, 2020, he injured his foot in the line of duty after responding to a call that required him to subdue a subject who was resisting arrest; (3) he sought treatment for his foot injury; (4) on June 22, 2020, the City's doctor placed him in a walking boot and placed him on work- and activity-related restrictions; and (5) on June 23, 2020, he returned to work and was assigned to a light-duty project, during which he could not perform the full duties of a police officer but was able work full-time in compliance with the work restrictions ordered by the doctor.

¶ 14        The CBA permitted the City to assign an employee injured on or off the job to a specific light-duty project for up to 180 days. The City assigned Allenbaugh to such a position, where he worked and received full pay until January 4, 2021. In October 2020, Allenbaugh filed a claim with the Workers' Compensation Commission.

¶ 15        Allenbaugh's complaint alleged that on January 4, 2021, he "was taken completely off work" and he was "unable to perform his duties" as of that date. Allenbaugh attached to his complaint an "Information Bulletin" from his captain stating that "Effective Monday, January 04, 2021, Officer Joshua Allenbaugh shall be on IOD status until further notice." Allenbaugh's

- 4 -

complaint alleged that he should have begun receiving PEDA benefits on January 4, 2021, and those benefits should have continued until January 4, 2022.

¶ 16    Allenbaugh alleged that the City forced him to use his vacation and personal time in March 2021 in violation of the PEDA, which states that an eligible employee

> "shall continue to be paid by the employing public entity on the same basis as he was paid before the injury, with no deduction from his sick leave credits, compensatory time for overtime accumulations or vacation, or service credits in a public employee pension fund during the time he is unable to perform his duties due to the result of the injury." 5 ILCS 345/1(b) (West 2020).

¶ 17    Allenbaugh alleged that the City, through its counsel, sent his attorney three letters addressing Allenbaugh's PEDA benefits, and he attached these letters to his complaint. The first letter, dated June 1, 2021, informed Allenbaugh's workers' compensation attorney that on June 17, 2021, Allenbaugh would be transitioned to "temporary total disability" pay because "he will have received one full year of IOD benefits in accordance with the Public Employee Disability Act." In the second letter, dated June 7, 2020, the City, through counsel, informed Allenbaugh's attorney that (1) "Allenbaugh should be afforded another 60 calendar days of IOD per Section 34.1 of the current collective bargaining agreement" and (2) he would be transitioned to temporary total disability benefits on August 17, 2021. On August 11, 2021, counsel for the City sent a third letter, stating, "[W]e took Mr. Allenbaugh's light duty [work] into account in extending his transition date from June 17th to August 17th, in accordance with Section 34.1 of the Collective Bargaining Agreement."

¶ 18    According to Allenbaugh, the City gave him "no basis for denying him a full year of PEDA, making him use his vacation and sick pay during the time they admitted PEDA applied,

and transitioning him onto workers' comp before he had been considered disabled for a year."

¶ 19    Allenbaugh admitted in his complaint that he did not file a grievance or attempt to grieve the issue of his PEDA benefits under the terms of the CBA. Allenbaugh explained that he did not try to grieve the issue because (1) "the arbitrator does not have jurisdiction per the CBA," (2) "PEDA benefits are statutory and cannot be altered, modified, or changed by the CBA," and (3) he "was required to file a declaratory judgment action[,] as only the Illinois Courts have the authority to declare his rights vis-a-via [*sic*] PEDA." Allenbaugh further alleged that the CBA defined a "grievance" as " 'a dispute or difference of opinion concerning the meaning or interpretation of specific provisions of this Agreement,' " and he noted that a difference of opinion as to the meaning or interpretation of Illinois law does not qualify as a grievance.

¶ 20    Allenbaugh alleged that the trial court had jurisdiction "because there is an actual controversy on the issue of Illinois law, *i.e.*[,] the PEDA statute, as to when it begins and when it applies and that the controversy exists between Allenbaugh and the City." He also asserted that this "Court need not look to the Collective Bargaining Agreement at all as Allenbaugh's rights under PEDA are clearly enumerated under 5 ILCS 345/1 *et seq.*" He further alleged that the City had "violated [his] rights and interests under PEDA by making him use his vacation and sick time as well as deducting money from those funds," and, "As a result of the [City's] actions, which violate the PEDA Statute, Allenbaugh sustained economic harm in both taxes being taken out and benefits being taken away from him that should not have occurred while he was PEDA eligible."

¶ 21    In Allenbaugh's prayer for relief, he requested the trial court issue a declaratory judgment that "Respondent honor its obligations under PEDA and pay what is required of them." He also requested attorney fees and costs.

¶ 22    The City filed yet another motion to dismiss, raising the same grounds it had

previously asserted—namely, the trial court lacked jurisdiction over the matter because Allenbaugh failed to exhaust his remedies under the CBA by filing a grievance. The parties fully briefed the matter, and the court conducted a hearing on the motion in September 2022.

¶ 23    After considering the arguments of the parties, the trial court denied the City's motion to dismiss. The court concluded that based on the specific allegations in Allenbaugh's complaint, the issue before the court was a matter of statutory interpretation of the PEDA and did not require consideration of the CBA. The court noted that Allenbaugh's allegations concerning the City's reduction of sick time and vacation time were not mentioned in the CBA and, if proven, were clearly contrary to the PEDA's requirements. The court emphasized that it was not making a definitive statement about the merits of the City's defense regarding Allenbaugh's failure to grieve.

¶ 24    B. The Parties' Motions for Summary Judgment

¶ 25    1. *Allenbaugh's Motion for Entry of Declaratory Judgment*

¶ 26    Allenbaugh filed a brief in support of entry of a declaratory judgment in his favor, in which he argued that the City had violated the PEDA in various related ways. (We note that Allenbaugh's brief was not titled "motion for summary judgment"; however, the parties and the trial court treated it as such.) Specifically, Allenbaugh argued that (1) the City miscalculated the applicable dates/time period during which he was eligible for PEDA benefits and (2) as a result of this miscalculation, the City did not properly calculate his benefits or compensate him for those benefits. Allenbaugh further alleged that even assuming the City's dates were correct, the City violated the PEDA by deducting sick leave, personal time, and vacation leave from his pay during the months of March and April 2021.

¶ 27    In support of Allenbaugh's request for the entry of a declaratory judgment, he attached an affidavit detailing the alleged violations and how those violations resulted in his loss

of specific benefits pursuant to the terms of the CBA.

¶ 28    In response, the City argued that judgment was not appropriate because, among other things, (1) a litany of material facts was in dispute—namely, the City denied that it had improperly calculated Allenbaugh's benefits or deducted various forms of leave as alleged in his affidavit and (2) the resolution of his claims necessarily required the interpretation of the CBA, which could only be resolved through the grievance process. The City noted that Allenbaugh admitted he did not grieve his claims and the alleged violations concerning the length of PEDA benefits, the withholding of those benefits, and calculation of those benefits all depended upon (1) the resolution of material facts that were still in dispute and (2) an interpretation of the various provisions of the CBA providing for the benefits Allenbaugh claimed were miscalculated. Because the resolution of Allenbaugh's claims was intimately bound up in the meaning of various provisions of the CBA, the City asserted that they were subject to the exclusive grievance procedures and Allenbaugh's failure to grieve precluded judicial review of those claims.

¶ 29    2. *The City's Motion for Summary Judgment*

¶ 30    In August 2023, the City filed a motion for summary judgment, in which it argued that Allenbaugh's claims were preempted by the CBA. The City reiterated the arguments that it made in response to Allenbaugh's brief for a declaratory judgment and expanded on them.

¶ 31    C. The Trial Court's Ruling

¶ 32    In January 2024, the trial court entered a written order granting summary judgment in favor of the City, in which it wrote the following:

> "The Respondent's motion for summary judgment is granted as to the need for the substantive issues to have [been] grieved under Article 5 of the CBA, as interpretation of Article 34 is at the heart of the issues Petitioner is seeking redress

for in Petitioner's 2nd Amended Verified Petition for Declaratory Judgment."

¶ 33　　　　This appeal followed.

¶ 34　　　　　　　　　　II. ANALYSIS

¶ 35　　　　In this case, the trial court entered summary judgment in favor of the City because the court concluded that Allenbaugh's PEDA claim depended on an interpretation of section 34.1 of the CBA and was therefore subject to the mandatory grievance procedures therein. Accordingly, we must address on appeal whether section 34.1 of the CBA applied to Allenbaugh's request for the court to declare (1) the dates he was entitled to PEDA benefits and (2) the City violated the PEDA by (a) failing to pay the full duration of benefits, (b) withdrawing employment taxes from the benefits, and (c) decreasing his sick and vacation leave from the benefits. We conclude that a declaration of Allenbaugh's rights under the PEDA was dependent on an interpretation of section 34.1 and therefore subject to mandatory grievance procedures.

¶ 36　　　　　　　　A. The Applicable Law and Standard of Review

¶ 37　　　　Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party's right to judgment as a matter of law is clear and free from doubt. *Johnson v. Armstrong*, 2022 IL 127942, ¶ 31, 211 N.E.3d 355. When examining whether a genuine issue of material fact exists, a court construes the evidence in the light most favorable to the nonmoving party and strictly against the moving party. *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 22, 131 N.E.3d 488. "The purpose of summary judgment is not to try a question of fact, but to determine whether one exists." (Internal quotation marks omitted.) *Larson v. Crosby*, 2024 IL App (4th) 230646, ¶ 64, 240 N.E.3d 1200. A trial court's entry of summary judgment is reviewed *de novo*. *Monson v. City of Danville*, 2018 IL 122486, ¶ 12, 115 N.E.3d 81.

¶ 38                          B. Declaratory Judgment

¶ 39        Allenbaugh first argues that the trial court incorrectly applied the declaratory judgment statute (735 ILCS 5/2-701 (West 2022)) when it granted summary judgment in favor of the City based on Allenbaugh's failure to seek the alternative remedy of filing a grievance under the CBA.

¶ 40        The City responds that the exclusive grievance procedure in section 5.9 of the CBA is not an alternative remedy but instead an exclusive remedy. In other words, the City asserts that the declaratory judgment statute does not invalidate a contractual agreement to submit to binding arbitration or otherwise waive a right to a judicial forum. We agree with the City.

¶ 41        As an initial matter, the trial court did not err by considering whether the CBA operated to bar the declaratory judgment action. The declaratory judgment statute states that the existence of another remedy is not a basis for rejecting a declaratory judgment action. 735 ILCS 5/2-701 (West 2022). However, the City is not arguing that Allenbaugh was required to seek another *remedy*; the City argues that Allenbaugh was required to obtain his requested remedy in a particular *forum* using a particular *process*—namely, the grievance and arbitration procedure set forth in Article 5 of the CBA. And nothing in the declaratory judgment statute forbids parties from contracting for an exclusive forum for contract disputes. Indeed, exclusive arbitration provisions are required by section 8 of the Illinois Public Labor Relations Act (5 ILCS 315/8 (West 2020)).

¶ 42                   C. Whether Allenbaugh's PEDA Claim Required an

                          Interpretation of the CBA and Was Subject to

                        Mandatory and Exclusive Grievance Procedures

¶ 43        The dispute in this case centers on whether Allenbaugh's claims are dependent upon an interpretation of the provisions of the CBA. If so, the City argues that Allenbaugh's failure

to file a grievance precluded his seeking judicial review of the claim. Allenbaugh, however, asserts that (1) the grievance procedure in the CBA was merely an alternative remedy that did not prevent him from seeking declaratory relief setting forth his rights, (2) his claims were predicated solely on the PEDA, which was not incorporated into or altered by the CBA and therefore grievance was not required, and (3) even assuming the PEDA was incorporated into the CBA, he was not required to grieve the matter because (a) the incorporation did not constitute a clear waiver of the right to a judicial forum for the resolution of his statutory claim and (b) the arbitration provision of the CBA did not authorize the arbitrator to interpret state law.

¶ 44                               1. *The Applicable Law*

¶ 45          The City primarily relies on *Gelb v. Air Con Refrigeration & Heating, Inc.*, 356 Ill. App. 3d 686, 692-93, 826 N.E.2d 391, 398-99 (2005), which states the following:

> "In order to determine whether a claim filed pursuant to a state statute or common law tort is preempted, we examine the character of the claim. [Citation.] Where a matter is purely a question of state law and is entirely independent of any understanding of the terms of a collective bargaining agreement, it may proceed as a state-law claim. [Citation.] By contrast, where the resolution of a state-law claim depends on an interpretation of the collective bargaining agreement, the claim will be preempted. [Citation.] Where claims are predicated on rights addressed by a collective bargaining agreement, and depend on the meaning of, or require interpretation of its terms, an action brought pursuant to state law will be preempted by federal labor laws. [Citation.] Defenses, as well as claims, must be considered in determining whether resolution of a state-law claim requires construing of the relevant collective bargaining

- 11 -

agreement. [Citation.]"

¶ 46    The City also relies on *Glasper v. Scrub Inc.*, 2021 IL App (1st) 200764, ¶ 36, 199 N.E.3d 334, which wrote the following:

"We have previously held that the mere existence of a CBA does not require all claims to be subject to the grievance and arbitration procedures of it. *Gelb*, 356 Ill. App. 3d at 695. Instead, the court must consider if the claim is one governed by contract. *Id.* However, where a CBA 'adequately addresses an aspect of employee compensation or other working conditions, a state statute will defer to the collective bargaining agreement's grievance procedures.' *Id.* Further, when the 'employee's claim arises entirely out of a collective bargaining agreement, the employee lacks standing to pursue judicial relief without first exhausting any remedies provided for in the agreement.' *Id.*"

¶ 47    Allenbaugh relies on *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70 (1998). In *Wright*, the Supreme Court addressed whether the general arbitration provision in the applicable CBA was sufficiently broad to encompass a statutory claim of discrimination arising under the Americans with Disabilities Act (ADA). *Id.* at 75. The Supreme Court concluded that the employee's "cause of action *** arises not out of contract, but out of the ADA, and is distinct from any right conferred by the" CBA, and it explained that "the ultimate question for the arbitrator would be not what the parties have agreed to, but what federal law requires; and that is not a question which should be *presumed* to be included within the arbitration requirement." (Emphasis in original.) *Id.* at 79. The Supreme Court further explained that, as a general rule, for a waiver of a statutory right against discrimination and review in a federal judicial forum to be effective, the language in a CBA must be "clear and unmistakable," such as by incorporating the statute by

reference. *Id.* at 80.

¶ 48    Allenbaugh also relies on *Ameren Illinois Co. v. International Brotherhood of Electrical Workers*, 906 F.3d 612, 617 (7th Cir. 2018), for the proposition that an arbitrator's authority derives solely from a CBA and is limited to questions involving contractual rights under that agreement. Generally, an arbitrator has no authority "to invoke public laws that conflict with the bargain between the parties," and when an arbitrator's decision is based "solely upon the arbitrator's view of the requirements of enacted legislation, rather than on the interpretation of the [CBA], the arbitrator has exceeded the scope of the submission." (Internal quotation marks omitted.) *Id.* However, the Seventh Circuit Court of Appeals noted that "unions and employers have begun to incorporate external law into their CBAs more frequently" and "[w]hen that is the case, we will respect the parties' decision *** to allow the arbitrator to apply external law." *Id.* at 619.

¶ 49    This court recently addressed the entry of summary judgment in a declaratory judgment action seeking a determination of rights under the PEDA. In *Bitner v. City of Pekin*, 2024 IL App (4th) 230718, ¶ 5, the police officer plaintiffs, who were injured in the line of duty, filed a declaratory judgment action against the defendant employer, alleging violations of the PEDA. The plaintiffs specifically sought two declarations that the defendant violated the PEDA (1) by improperly withholding employment taxes from their benefits and (2) by unlawfully deducting accrued sick, compensatory or vacation time from their benefits. *Id.* The defendant admitted to withholding taxes but denied deducting sick, vacation, or compensatory time from the benefits. *Id.* The defendant also asserted affirmative defenses of the failure to exhaust contractual remedies and the statute of limitations. *Id.* The parties filed cross-motions for summary judgment, and the trial court entered judgment in favor of the plaintiffs, ruling, in relevant part, that the plaintiffs were

not required to file a grievance pursuant to the CBA because the parties disputed only the meaning of the PEDA and not the meaning of any provision of the CBA. *Id.* ¶ 9.

¶ 50    On appeal, the defendant argued, among other things, that the trial court erred by denying its affirmative defenses of the failure to grieve and the statute of limitations. *Id.* ¶ 2. When analyzing those issues, this court wrote the following:

"Plaintiffs maintain they brought a breach of contract claim against defendant. They reason that because the CBA required defendant to 'comply with the [PEDA] regarding on-duty claims,' their declaratory judgment action involving the [PEDA's] meaning amounts to a breach of contract action. Yet plaintiffs also argue they need not adhere to the contract by filing a grievance under the CBA before seeking relief in the circuit court. This dissonance is deafening. On one hand plaintiffs emphasize the importance of the CBA, and on the other they minimize the CBA. Plaintiffs cannot prevail on both claims.

The second amended complaint does not reference the CBA. This case centers on the [PEDA's] meaning, not the CBA. The relief plaintiffs sought— declaratory judgment on whether the [PEDA] prohibits tax withholding—depends entirely on the [PEDA]. We need not interpret the CBA. This is why we agree with plaintiffs that Bitner was not required to file a grievance pursuant to the CBA. See *Kostecki v. Dominick's Finer Foods, Inc., of Illinois*, 361 Ill. App. 3d 362, 369-70, 836 N.E.2d 837, 843 (2005) (finding a court must determine whether the claim is governed by the contract to ascertain whether a dispute is subject to an applicable CBA). But, more importantly, plaintiff Brooks was not a union employee and not subject to the CBA. He could not bring a breach of contract claim

- 14 -

via the CBA. We cannot construe plaintiffs' pleading as a breach of contract claim. The only claim universal to both plaintiffs *** is the declaratory judgment claim relating to the [PEDA]. For these reasons, we conclude plaintiffs' second amended complaint seeking a declaratory judgment on whether the [PEDA] prohibited defendant from withholding employment taxes from benefits and whether defendant unlawfully deducted from Bitner's accrued sick, compensatory, or vacation time falls under [the] catchall five-year statute of limitations for civil actions that do not have an otherwise applicable limitations period. See 735 ILCS 5/13-205 (West 2018)." *Id.* ¶¶ 24-25.

¶ 51                                    2. *This Case*

¶ 52        Applying *Bitner* to the present case, we note that the second amended complaint does reference the CBA in multiple ways. Most importantly, the complaint details the letters the City sent to Allenbaugh detailing how the City calculated his PEDA benefits expressly based on section 34.1 of the CBA.

¶ 53        Allenbaugh alleges in his complaint that (1) the City improperly calculated his receipt of PEDA benefits from the date of injury rather than when he was taken off of work, (2) he was forced to use vacation time and sick time in violation of the PEDA, and (3) the City improperly withheld employment taxes from his PEDA payments. In Allenbaugh's affidavit and motion for declaratory judgment, however, he raises all kinds of issues that involve the interpretation of the CBA. Allenbaugh stated in his motion that "there is a controversy between the Petitioner and Respondent as to when PEDA should have begun, how long it should have applied, and what his pay/benefits should have been while he was on PEDA." In Allenbaugh's affidavit, he claims that he was forced to use vacation time and sick time, his vacation days were not calculated properly

- 15 -

under the CBA, his compensation rates were not calculated properly under the CBA, and he missed out on pension contributions under the CBA, all because of how the City calculated his PEDA/IOD time.

¶ 54    It appears that Allenbaugh really has two groups of complaints. Those just described intimately involve the provisions of the CBA and require fact finding to resolve. These claims are clearly subject to the grievance process because they involve a difference of opinion about the meaning or interpretation of specific terms of the CBA. These are the explicit complaints Allenbaugh raised below.

¶ 55    The City argues that section 34.1 complements the PEDA statute, clarifying that the period of PEDA/IOD benefits will be calculated based on one calendar year from the date of injury. Section 34.1 further clarifies that the period an employee is working "light duty" counts against his PEDA/IOD benefits because, although the employee is working, he is still "unable to perform his duties" under the PEDA because he is not able to perform his full duties as a police officer. In exchange for this limitation on PEDA benefits, section 34.1 purports to give the added bonus of up to an additional 60 days of IOD payments or light duty work, provided the employee worked the requisite number of light-duty hours during the calendar year of PEDA benefits.

¶ 56    In Allenbaugh's declaratory judgment action, he never challenged whether this provision was permissible under the PEDA or Illinois law generally. Instead, he maintained that the term "IOD," as used in the CBA, is different from "injury in the line of duty which causes him to be unable to perform his duties" as used in the PEDA (5 ILCS 345(1)(b) (West 2022)). As Allenbaugh points out in his brief, the term IOD is never used in the PEDA, but IOD is used in various places throughout the CBA. Allenbaugh highlights section 15.7, which states that a "person on paid leave, to include IOD and Worker's Compensation, will be continued on the

benefit accrual systems and will be provided medical coverage as if he was actively on duty." Section 15.7 concludes by providing as follows: "Vacation leave not used while on IOD shall be paid off by the February of the following year if the employee is unable to schedule his vacation within the year his IOD commenced." Allenbaugh correctly notes that this provision is inconsistent with the PEDA because it essentially requires someone on IOD to use vacation time, which the PEDA prohibits.

¶ 57        However, Allenbaugh's argument ultimately demonstrates why his claim is based on the CBA and not strictly on the language of the PEDA. In order to determine whether the City violated the PEDA, one must look at section 34.1 to determine whether the CBA altered provisions of the PEDA. Section 34.1 introduces a new term, IOD, and a method of calculating those benefits. The CBA does not precisely define the term IOD, despite using that term in several provisions throughout the CBA. Further, "IOD" does not appear to be used in the same manner in all situations, although it generally has the same meaning. By that we mean that although "IOD" is consistently used to mean an injury incurred on duty, depending on the context in which the term is used, IOD may refer simply to the injury itself, a specific type of paid leave (such as/equivalent to sick leave), payments under the PEDA, or the calendar year period described in section 34.1.

¶ 58        Given this context, Allenbaugh's request for a declaration that the City violated the PEDA cannot be determined without careful consideration of the provisions of the CBA as a whole to determine the precise meaning of IOD, what the parties intended when they agreed to the language in section 34.1, and how that language fits in with the remainder of the CBA. In other words, although Allenbaugh's complaint requests an interpretation of the PEDA and not the CBA, a court cannot interpret the PEDA to determine whether the City complied with it without examining what the City did under the terms of the CBA.

¶ 59 In fact, in Allenbaugh's briefs submitted to this court on appeal, he repeatedly and explicitly *disclaims* that he is arguing that section 34.1 is invalid or unlawful. In Allenbaugh's reply brief, he states as follows:

"The City is correct that Article 34.1 is a valid and enforceable provision of the CBA. Allenbaugh is not arguing that Article 34.1 is invalid or unenforceable. But the language in Article 34.1 beyond the *** recitation of rights simply does not alter the PEDA statute. The City argues their interpretation of Article 34.1 and how it should be applied. [Citation.] *** The term 'PEDA/IOD' is not found in Article 34.1. [Citation.] Instead, the term IOD is the only term used in Article 34.1. The term 'IOD' is not found in the PEDA statute. 5 ILCS 345/1. And again, as argued above, the language of the CBA uses different terms for IOD and for PEDA. [Citation.] *** Article 34.1 thus does not provide a clear or express alteration of Allenbaugh's PEDA rights, meaning the City's interpretation is an attempt to renegotiate the terms of the CBA to something not agreed to by the Union."

¶ 60 Allenbaugh's arguments show that the character of his claim is dependent on the meaning and interpretation of the CBA and was subject to the grievance process. Despite his insistence to the contrary, had Allenbaugh filed a grievance against the City asserting the exact same arguments he made to the trial court and on appeal, the grievance process would have fully authorized the arbitrator to consider Allenbaugh's arguments and resolve the dispute in his favor if the arbitrator agreed with those arguments. At its core, the dispute or controversy between the parties in the present case is whether the CBA altered or modified the benefits required by the PEDA. The arbitrator could fully consider this argument without looking outside the terms of the CBA because the CBA expressly stated that the City would comply with the PEDA when required,

thereby incorporating the PEDA by reference into the CBA in a sufficient manner to allow an arbitrator to consider the language of the statute as being an express provision of the CBA.

¶ 61 We note that other cases in Illinois involving the PEDA have come to the court after the parties went through the required grievance or arbitration procedures, which strongly suggests that there is nothing wrong with requiring union employees to grieve a PEDA claim before coming to court. See *Village of Steger v. Illinois Fraternal Order of Police Labor Council*, 2024 IL App (1st) 232341-U, ¶¶ 6-9.

¶ 62 Given that Allenbaugh's argument rests so heavily on the interpretation and construction of the CBA, we conclude that his claims are necessarily based in substantial part on the provisions of the CBA and are subject to the exclusive grievance procedure contained therein.

¶ 63 III. CONCLUSION

¶ 64 For the reasons stated, we affirm the trial court's entry of summary judgment in favor of the City.

¶ 65 Affirmed.